Arnold F. **LUBKEMAN**, Plaintiff,

v.

**COMMONWEALTH EDISON COMPANY,** Defendant.

No. 93 C 4142.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 22, 1995.

Leon M. Despres, Thomas Howard Geoghegan, Robert Chuck Drizin, Despres Schwartz & Geoghegan, Chicago, IL, for plaintiff Arnold F. Lubkeman.

Julie O'Donnell Allen, Lisa D. Freeman, Sidley & Austin, Chicago, IL, for defendant Commonwealth Edison Co.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant Commonwealth Edison Company ("ComEd") for summary judgment. For the following reasons, the motion is granted.

### FACTS [1]

Plaintiff Arnold F. Lubkeman ("Lubkeman") brings this lawsuit pursuant to 29 U.S.C. § 621, et seq. In his single-count complaint, Lubkeman alleges that ComEd terminated him due to his age rather than his qualifications. Lubkeman is a former employee of ComEd who occupied various positions with ComEd from May 14, 1973, until August 26, 1992, when he was terminated. At the time of his termination, Lubkeman was forty-four years of age.[2]

Lubkeman began his employment with ComEd on May 14, 1973, as a Helper, an entry level bargaining unit position. Lubkeman was initially assigned to the Mechanical Maintenance Department at ComEd's Zion Nuclear Generating Station. Between 1973 and 1984, Lubkeman progressed in the bargaining unit from Helper to "B–Man" to "A–Man." In September 1984, Lubkeman was promoted to an Engineering Assistant. The new position was designated as a pay grade five.

In addition to Lubkeman, six other Engineering Assistants worked on the Maintenance Department Staff: Ronald Placko ("Placko"), Paul Graessle ("Graessle"), Carl Gosch ("Gosch"), Charles Ginn ("Ginn"), Al Rasmussen ("Rasmussen") and Kenneth Cichon ("Cichon"). Between September 1984 and late 1987, Jim LaFontaine ("LaFontaine"), born in January 1948, was the Maintenance Staff Department Head, the supervisor for all seven Engineering Assistants.

During the period Lubkeman worked as an Engineering Assistant under LaFontaine, LaFontaine alleges that Lubkeman consistently ordered parts that were not in use at the Zion station and often failed to order the necessary parts. LaFontaine labeled Lubkeman "the worst performer on his staff because his writing skills were poor, he did not pay attention to detail, and his general attitude towards improving his performance was indifferent." In 1985, LaFontaine recommended that Lubkeman not receive a raise; despite these comments, however, Lubkeman received a one-half pay raise.

In late 1987, the Nuclear Division management redistributed the responsibilities of the Maintenance Staff to other departments. As

---

1. The following facts are drawn from the parties' statements of facts submitted in compliance with Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern District of Illinois.

2. Lubkeman was born on May 16, 1948.

a result, the Maintenance Staff was disbanded and the Engineering Assistants were reassigned. Contrary to LaFontaine's suggestions to superiors that Lubkeman be terminated at that time for poor performance, Lubkeman received a lateral transfer to work as a Procedure Writer [3] in the Mechanical Maintenance Department. Lubkeman remained at pay grade five. Mark Hansen ("Hansen"), born in March 1948, became Lubkeman's new supervisor.

ComEd instituted a new "Performance Planning and Review System ("PPR") in 1988. Under the PPR, supervisors were to meet with each management employee under their supervision every six months to discuss the goals and expectations of the management employee. At the end of each year, the supervisor rated the employee's performance by assigning a number from one to nine.[4] In Lubkeman's 1988 PPR, Hansen rated Lubkeman's performance between "needs improvement" and "unacceptable performance" because of Lubkeman's careless and incorrect performance of his duties.

In 1989, Hansen advanced to Senior Work Analyst and returned to the Mechanical Maintenance Department. Lubkeman accompanied Hansen in the move and was reassigned as an Engineering Assistant, a pay grade five position. He remained under Hansen's direction. Lubkeman was assigned to complete a variety of tasks, including coordinating TJM job sheets,[5] coordinating mechanical maintenance technical manuals,[6] and assisting mechanical maintenance work analysts. In 1989, Lubkeman received a PPR rating of "3," which equated to a below acceptable performance evaluation.

In 1990, Donald Cook ("Cook"), a Master Mechanic born in March 1947, became the department head for the Mechanical Mainte-

nance Department and replaced Hansen as Lubkeman's supervisor. Lubkeman remained a pay grade five Engineering Assistant and was the only Engineering Assistant that reported to Cook. Cook developed a series of fifteen duties for Lubkeman to perform. In 1990, Cook gave Lubkeman a PPR rating of "4." However, Cook told Lubkeman, "You're doing a fantastic job. You've come a long way. Keep up the good work."

In the year-end meeting between Cook and Lubkeman, Cook requested that Lubkeman obtain a magazine rack for the Mechanical Maintenance Department break room and a mailbox for the union mechanics. Lubkeman followed company procedure, which required Lubkeman to make the request through the Office Manager, Karen Mahony ("Mahony"), wait until she processed the request, and wait until the product arrived. After three months passed, Lubkeman contacted Mahony and inquired as to the location of the product. Mahony informed Lubkeman that the request was being processed and there was nothing to be done to hasten the procedure. During this time, Cook made repeated queries as to where the magazine rack and mailbox were and each time Lubkeman explained that the procedure was lengthy and he reported that he would follow through. Cook considered the failure to follow through on the assignment to be unsatisfactory.

By 1991, Cook determined that Lubkeman poorly performed several of his duties, including failing to stock current departmental forms, failing to keep track of the perfect attendance records, and failing to prevent overdue commitments. Moreover, Cook determined that Lubkeman had great difficulty performing his "shift picking" duties. Due to several mistakes in the manner in which Lubkeman picked union members for shifts

**3.** As a Procedure Writer, Lubkeman assisted in the drafting, approval and authorization of strict safety and regulatory guidelines which are critical to the operation and performance of work at the Zion station.

**4.** Generally, one, two, and three equates to an unacceptable performance that needs improvement; four, five, and six denotes that the employee is meeting expectations; seven and eight signify that the employee's performance is excep-

tional; and nine connotes that the employee's performance is "exceptional plus."

**5.** The TJM job sheet duty required Lubkeman to walk around the plant and record the location and size of various valves.

**6.** Lubkeman was responsible for cataloging manuals, which were not initially catalogued, and making them accessible to the rest of the Mechanical Maintenance Department.

and overtime, Cook was forced to meet with union officials on several occasions. Further, Cook states that he met with Lubkeman at least six times to "coach" Lubkeman on his performance deficiencies. However, the performance problems continued to occur. In Lubkeman's 1991 performance evaluation, Cook deemed Lubkeman's performance in five of the fifteen different duties as "needing improvement" and "below fully meeting expectations." Lubkeman's 1991 PPR rating was "3," the lowest rating received by an employee within the Mechanical Maintenance Department.

After the 1991 PPR, Dave Loeber ("Loeber"), born in 1947, one year before Lubkeman, replaced Cook as Lubkeman's supervisor. Lubkeman remained as an Engineering Assistant and at pay grade five. Lubkeman was the only Engineering Assistant that reported to Loeber. Loeber states that he too became dissatisfied with the deficiencies in Lubkeman's performances. Loeber further claims that he met with Lubkeman on several different occasions. Due to the problems which Lubkeman exhibited, Loeber removed six duties from Lubkeman's task list, leaving nine. In Lubkeman's 1992 PPR rating, Loeber specified that Lubkeman's main need for improvement was his attention to detail. Loeber stated that he did not know Lubkeman's age when Lubkeman was under his supervision, and that age played no role in Loeber's PPR evaluation.

In the spring of 1992, ComEd faced several dire economic problems. ComEd was ordered by the Illinois courts to refund approximately $653 million dollars to its customers. Annual operating and maintenance costs rose by 25% between 1989 and 1991. Moreover, ComEd stock earnings drastically declined. In 1989, earnings were $2.83 per share. By 1991, the earnings were only 8 cents per share. ComEd's retained earnings declined by 1.38 billion dollars from 1989 to June 1992.

In response to the financial conditions and economic constraints, ComEd officers undertook several measures to reduce operating costs, including reducing the management work force by 1,250 positions. Station managers had discretion to identify positions for

elimination and candidates for termination. After station managers made such decisions, senior managers in the nuclear business unit and a review committee would review the decisions.

Thomas Joyce ("Joyce") was the Station Manager for the Zion Nuclear Generating Station. Senior ComEd officials instructed Joyce to specifically identify positions to eliminate and identify candidates for involuntary termination. In making these determinations, ComEd instructed Joyce that no employee within two years of retirement could be involuntarily separated and that no employee who had been promoted from the bargaining unit to management within the last three years could be involuntarily separated. With the assistance of his "direct reports," Joyce reviewed the work performed at the Zion Station to determine which jobs and tasks could be eliminated. Moreover, the group reviewed PPR ratings for the entire management roster, identifying those with poor or marginal performance rankings as well as those persons with acceptable rankings but who were in a job designed to meet their limited abilities. The names of these people were included as a part of a single list. Lubkeman's name was on this list.

Several supervisors in ComEd's hierarchy reviewed the list. After the list was re-evaluated and re-ranked, the list was submitted to Cook, who provided the names of the employees with the five lowest PPR's to higher management personnel. Lubkeman was the lowest rated employee and the weakest performer in the entire Mechanical Maintenance Department.

The list from the Mechanical Maintenance Department was assimilated with lists from other departments to form a separation list. Employees from this list were to be terminated. Kurth prepared a "Separation Justification Form" for Lubkeman. This form stated that Lubkeman had "[v]ery limited skills and has moved through several jobs due to his inability to function independently. The job he is now performing has been restructured to fit his limited abilities. The job will be eliminated [sic] that he currently performs and limited ability will preclude him

[sic] taking on more complex functions." A Special Review Committee reviewed Lubkeman's Separation Justification Form and approved his separation on August 13, 1992. On August 26, 1992, Lubkeman was terminated along with sixteen other individuals. Lubkeman's position was eliminated and his previous duties were assumed by various management and union personnel.

From 1986 through the date the complaint was filed, ComEd elevated five of the seven former Engineering Assistants in pay grade. Placko, born in March 1952, advanced to Supervisor, a grade level six. Rasmussen, born in July 1950, Ginn, born in April 1952, and Cichon, born in March 1956, were also promoted to Supervisor. Graessle, born in June 1947, was elevated to Work Analyst, a pay grade six position. With the exception of Cichon, all men were at least forty years old on the date Lubkeman was terminated. All five men continue to work for ComEd. Gosch, born in January 1934, retired in October 1991. Lubkeman never exceeded pay grade five.

On October 21, 1992, Lubkeman filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). On July 12, 1993, Lubkeman filed this action in the United States District Court for the Northern District of Illinois. He alleges that ComEd engaged in unlawful employment practices in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. In the single-count complaint, Lubkeman alleges that his age was the motivating factor in his termination. ComEd contends that Lubkeman's employment was terminated due to a reduction in force and that Lubkeman's poor performance ratings, not age, were the cause for his placement on the separation list.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 931 (7th Cir.1994). Summary judgment is not a discretionary remedy, it must be granted when warranted. *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994) (per curiam). The burden rests with the moving party to demonstrate an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994), presenting merely a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir.1994). Furthermore, a "metaphysical doubt" concerning the existence of a genuine issue of fact is not enough to preclude a summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment, *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992); a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

The court now turns its attention to the merits of the motion. Congress enacted the ADEA primarily to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimi-

nation in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). "The ADEA, enacted in 1967 as part of an ongoing congressional effort to eradicate discrimination in the workplace, reflects a societal condemnation of invidious bias in employment decisions. The ADEA is but part of a wider statutory scheme to protect employees in the workplace nationwide." *McKennon v. Nashville Banner Publishing Co.,* —— U.S. ——, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995). The ADEA makes it unlawful for employers to engage in the following conduct:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). The prohibitions under ADEA are limited to those who have attained the age of forty or older. 29 U.S.C. § 631(a). Any person who is at least forty years of age and is discriminated based on age may commence a civil action for legal or equitable relief. 29 U.S.C. § 626(c)(1).

▆▆▆ To establish liability under the ADEA, a plaintiff must prove that age accounted for the employer's decision to terminate the plaintiff—in other words, the issue is whether the same events would have transpired if the employee had been younger than forty all else was equal. *Gehring v. Case Corp.,* 43 F.3d 340, 342–43 (7th Cir. 1994). The plaintiff is, however, not required to prove that his or her age was the only factor in the employer's decision to discharge. *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). Rather, an ADEA plaintiff is only required to prove that he or she would not have been terminated

"but for" his or her age. *Fisher v. Transco Serv. Milwaukee, Inc.,* 979 F.2d 1239, 1243 (7th Cir.1992).

There are two methods of proof available to a plaintiff to demonstrate unlawful age discrimination. The first method of proof, the direct method, is to adduce direct or circumstantial evidence tending to evince that his or her age was a substantial factor in the discharge decision. *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992). The second method of proof, commonly known as the burden-shifting or inferential method as outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is to establish a prima facie case, creating a rebuttable presumption of discrimination. *Weiss v. Coca–Cola Bottling Co.,* 990 F.2d 333, 336 (7th Cir.1993). While the burden-shifting method was originally framed by the *McDonnell* Court to address actions arising under the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the method was adopted by the Seventh Circuit to govern ADEA claims. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988); *Ayala v. Mayfair Molded Prods. Corp.,* 831 F.2d 1314, 1318 (7th Cir.1987); *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1212 (7th Cir.1985). The Seventh Circuit has continuously rejected a proposed third method of proving age discrimination which attempts to demonstrate that a reduction in force had a disparate impact on all older employee's of a company as opposed to disparate treatment of one individual. *Gehring,* at 342–43; *EEOC v. Francis W. Parker School,* 41 F.3d 1073 (7th Cir.1994); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir. 1994).

In the instant motion, ComEd argues that there is no direct or circumstantial evidence of age discrimination; therefore, Lubkeman can only prevail under the burden-shifting analysis. The court agrees. No direct or circumstantial evidence exists to indicate that Lubkeman's age was a "but for" factor in ComEd's decision to terminate him. Thus, the direct method of proof is inapplicable in the instant case and the court uses the *McDonnell Douglas* burden-shifting analysis.

■ There are three phases to the burden-shifting method. The initial burden of satisfying the first phase is on the plaintiff. The plaintiff must establish a prima facie case of discriminatory discharge by demonstrating that "(1) he was a member of the protected class (persons over forty), (2) he was performing his job well enough to meet his employer's legitimate expectations, (3) he was discharged, and (4) the employer sought a replacement for him." *Sarsha*, 3 F.3d at 1039. However, in a reduction-in-force situation, the fourth element may be satisfied by establishing that younger employees were treated more favorably than the plaintiff based on age. *Smith v. Gen. Scanning, Inc.*, 876 F.2d 1315, 1318 (7th Cir.1989); *Oxman*, 846 F.2d at 453.

Once a prima facie case is established, a rebuttable presumption is created that the employer's decision to terminate was the result of impermissible factors. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1144–45 (7th Cir. 1994). This rebuttable presumption shifts the burden of production to the employer to "articulate a legitimate reason for the discharge." *Weiss*, 990 F.2d at 336. This is the second phase of the shifting method. The employer "need not persuade the court that it was actually motivated by its proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The employer is only required to submit any lawful justification for the termination in question. *Id.* If the employer fails to offer a legitimate, non-discriminatory reason for its decision to terminate, judgment must be entered against the employer and in favor of the plaintiff. *Id.*

If, however, the employer satisfies the second phase, the rebuttable presumption is dissolved and the burden of persuasion, not merely production, shifts back to the plaintiff for the third phase. *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 533 (7th Cir.1994). The third phase requires the plaintiff to show that the employer's proffered explanation for the termination amounts to nothing more than a mere pretext for discrimination. *Fisher*, 979 F.2d at 1243. To meet this burden of production, the plaintiff is not re-

quired to produce direct evidence to contradict the proffered reason. The plaintiff may either persuade the court that, more likely than not, the discriminatory reason motivated the employer or that the purported explanation is unworthy of credence. *Burdine*, 450 U.S. at 257, 101 S.Ct. at 1095–96. Thus, under the burden-shifting approach, if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, then the employer's decision remains unexplained and the inferences from plaintiff's evidence may be sufficient to prove the ultimate fact of discriminatory intent. *Oxman v. WLS–TV*, 12 F.3d 652, 657 (7th Cir.1993) (quoting *Ayala*, 831 F.2d at 1319). However, in a case in which two or more motives were said to be operative in the employer's decision to fire an employee, the employee cannot prevail in a suit against the employer if a lawful reason alone would have sufficed to justify the firing. *McKennon*, —— U.S. at ——–——, 115 S.Ct. at 884–85 (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 284–87, 97 S.Ct. 568, 574–76, 50 L.Ed.2d 471 (1977)).

The court next looks to whether Lubkeman met his burdens under the inferential or burden-shifting method. ComEd concedes that Lubkeman met the first and third element of his prima facie case. However, ComEd argues that Lubkeman failed to perform his duties satisfactorily and that Lubkeman's former job was eliminated. Furthermore, ComEd asserts, Lubkeman's previous position was not filled with a younger employee nor was Lubkeman treated unfavorably based on his age.

■ The court finds that Lubkeman has failed to satisfy the second and fourth elements of his prima facie case. Lubkeman did not perform his job well enough to meet ComEd's expectations. Furthermore, ComEd did not seek a replacement for him or did not treat Lubkeman less favorably than younger employees.

The facts show that Lubkeman had not performed his job satisfactorily since 1984, the year he initially became an Engineering Assistant. LaFontaine, Lubkeman's supervisor in 1984 and 1985, stated that Lubkeman was "the worst performer on his staff be-

cause his writing skills were poor, he did not pay attention to detail, and his general attitude towards improving his performance was indifferent." In 1985, LaFontaine recommended to higher management that Lubkeman not receive a raise.

In late 1987, Lubkeman was reassigned as a Procedure Writer under the supervision of Hansen. Using the newly developed PPR, Hansen rated Lubkeman's performance in 1988 between "needs improvement" and "unacceptable performance." Hansen attributes the poor rating to Lubkeman's careless and incorrect performance of his duties. In 1989, Hansen rated Lubkeman a "3" on a nine-point scale; this rating equated to a below-acceptable evaluation.

In 1990, although Lubkeman's new supervisor, Cook, commented on Lubkeman's improvement, Lubkeman still received a rating of "4," the lowest number in the "meeting expectations" category. However, during the next year, Cook determined that Lubkeman did not perform his duties competently. In support of this determination, Cook cites several examples of different occasion in which Lubkeman failed to perform various job tasks. This unacceptable work performance was evidenced by Lubkeman's 1991 performance rating, a "3." This rating was the lowest rating assigned to an employee within the department.

In 1992, a new supervisor, Loeber, became dissatisfied with Lubkeman's job performance as well. Loeber removed 40% of Lubkeman's job tasks as a result of Lubkeman's lack of attention to detail. By 1992, when ComEd's separation lists were compiled, Lubkeman was the lowest rated employee in his entire department. Moreover, Lubkeman had the weakest performance record in the whole department.

In addition to Lubkeman's poor performance evaluations and history of poor performance, Lubkeman remained at pay grade five. Of the seven Engineering Assistants Lubkeman worked with in 1984, Lubkeman was the only person not to be promoted. Lubkeman did not advance in rank, pay, or position. It is clear from the evidence that Lubkeman did not perform his job well enough to meet his employer's expectations.

In fact, Lubkeman was effectually demoted; Lubkeman's supervisor significantly diminished his job tasks in 1992. Therefore, Lubkeman failed to produce any evidence of sufficient job performance necessary to satisfy the second requirement of the first phase.

■ Lubkeman not only fails to satisfy the second element, but also fails to adduce any evidence to prove the fourth element of a prima facie case—*viz.*, that the employer sought a replacement for him. Since ComEd completely eliminated Lubkeman's former position and redistributed the former tasks among the remaining workers, the employer sought no replacement. ComEd eliminated Lubkeman's job position due to financial constraints and was not financially able to hire another employee. Moreover, Lubkeman did not establish that younger employees were treated more favorably than he was based on age. While Lubkeman need not prove that persons who are not members of the protected class replaced him or that they received favorable treatment, *Kralman v. Ill. Dept. of Veterans' Affairs*, 23 F.3d 150, 154–55 (7th Cir.1994), he must at a minimum prove that employees younger than he, who may or may not be over forty years of age, replaced him or received favorable treatment. In this case, no such evidence exists. Five older employees, Cook, Hansen, Loeber, LaFontaine, and Graessle, all remained employed after the date of Lubkeman's termination. Lubkeman cannot establish the fourth element simply because younger employees, such as Placko, Rasmussen, Ginn, and Cichon, continued to work for ComEd after he was terminated. The simple fact that the age differences between the men and Lubkeman (four years, two years, four years, and six years respectively) were "fairly marginal" weakens Lubkeman's claim. *See Rand,* 42 F.3d at 1147; *Kralman,* 23 F.3d at 155–56. Lubkeman produced nothing to show that the men remained because of their age as opposed to their abilities and employment history. On the other hand, ComEd affirmatively produced information showing that the four younger men had above average job performance. Such performance resulted in promotions to higher pay grade levels. Lubkeman's failure to put forth evidence that he was treated unfairly due to age results in a failure to satisfy the fourth element. Ac-

cordingly, the court holds that Lubkeman has failed to establish a prima facie case and his claim must fail.

■ Even if Lubkeman could state a prima facie case, Lubkeman cannot show that ComEd's explanations for Lubkeman's early discharge was pretext for age discrimination. ComEd and Lubkeman agreed that ComEd was forced to make many drastic changes due to its poor financial condition and economic constraints. Both parties agree that terminating 1,250 employees was one of the necessary measures to reduce operating costs. Therefore, the court finds that ComEd satisfied its burden of presenting a legitimate, non-discriminatory reason for Lubkeman's termination; in meeting this burden, ComEd has successfully dissolved any presumption of discrimination.

The burden, thus, shifts to Lubkeman to show that the employer's stated reason for discharge is pretextual. "[T]he ADEA commands that 'employers are to evaluate [older] employees ... on their merits and not their age.'" *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) (quoting *Western Air Lines, Inc. v. Criswell,* 472 U.S. 400, 422–23, 105 S.Ct. 2743, 2756, 86 L.Ed.2d 321 (1985)). Lubkeman must produce evidence that ComEd's decision to terminate him was due, in part, to age.

No evidence exists in the record to support Lubkeman's contention that ComEd offered a pretextual reason to this court. The only evidence which Lubkeman alludes to was that several performance evaluations were incorrect and that they did not fairly represent his true achievements. Had he been given his deserved performance evaluations, Lubkeman argues, he would not have been placed on the separation list and would not have been terminated. Unfortunately, this argument is without merit and misplaced in rebutting the issue or pretext.

■ These arguments are directed towards the wisdom of ComEd's actions, not the factual basis for the decision. *Rand,* 42 F.3d at 1145–46. The issue of pretext does not focus on the correctness or desirability of the reasons offered by the employer. *Kralman,* 23 F.3d at 156–57. Instead, the issue of pretext focuses on the question of whether the employer honestly believes in the reasons it asserts. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992). The Seventh Circuit has reasoned as follows:

> [W]e do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale [v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986) ]. "No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.1987). Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior."

*Id.; Smith,* 876 F.2d at 1321 (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988)) (brackets in original). To establish that the employer's reasons for the termination is a pretext for discrimination, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. . . . [rather] he must show that the explanation is 'a phony reason.'" *Pignato v. Am. Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994). Lubkeman cannot establish that ComEd's legitimate, non-discriminatory reason of downsizing was "phony." As a result, Lubkeman's failure to show that the ComEd's proffered explanation amounted to nothing more than mere pretext is fatal to his claim under the ADEA.

The court holds, first, that Lubkeman failed to establish a prima facie case and, second, that he failed to prove the proposed explanation for ComEd's employment decision to terminate Lubkeman was a pretext for age discrimination. Accordingly, the court finds that ComEd did not engage in unlawful age discrimination in terminating Lubkeman as a matter of law.

### CONCLUSION

For the foregoing reasons, the motion of ComEd for summary judgment is granted.

IT IS SO ORDERED.