Mary HOPSON, Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,
an Illinois corporation, Defendant.

No. 95 CV 5401.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 12, 1996.

David Mark Bagdade, Carey M. Stein, Ashman & Stein, Chicago, IL, for Mary Hopson.

Steven L. Gillman, Allison Carol Blakley, Annalisa Martinez–Cooper, Fox and Grove, Chartered, Chicago, IL, for Continental Cas. Co.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Mary Hopson ("Hopson") filed this action against her former employer, Defendant Continental Casualty Company ("Continental"), alleging that Continental terminated her employment because of her age—46, at the time of her termination—and/or her race—African-American—in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* as amended, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991, Pub.L. 102–166. Continental now moves for summary judgment with respect to Hopson's discrimination claims. For the reasons set forth below, the Court grants Continental's motion.

## BACKGROUND

The following facts, taken from Continental's Local Rule 12(M) Statement of Material

Facts, are undisputed by the parties. Hopson, an African–American woman born on May 23, 1948, was hired by Continental as a programmer analyst in February 1986. Hopson worked in Continental's systems department from her hire until her position was eliminated on November 18, 1994. Specifically, Hopson was employed in the Machine Account Checking Receivables systems group (the "MAC Group") at Continental, providing MAC systems support for Continental's Ceded Reinsurance Group ("CRG").

Hopson was one of three team members in the MAC Group; the other two team members were Inez Jordan ("Jordan"), an African–American woman born on September 10, 1957, and Sol Shniderman ("Shniderman"), a Caucasian man born on January 27, 1951. Jordan was the MAC Group team leader. While employed in the MAC Group, Hopson's immediate supervisor was Laura Howell ("Howell"), and Howell's immediate supervisor was David Juenger ("Juenger"). Juenger maintained ultimate control over the MAC Group.

Prior to her assignment to the MAC Group, Hopson worked in a different small business unit ("SBU") within Continental's systems group, the GCC Group. Hopson requested and received a transfer from the GCC Group to the MAC Group in 1993.

## A. *Hopson's Performance At Continental*

Hopson's job performance at Continental formally was evaluated once a year. While Hopson believes her performance consistently was rated "average, good" throughout her employment at Continental, in fact, she never was rated higher than "competent," and often received ratings of "needs improvement." For example, in her annual performance evaluation for the period from February 1987 to February 1988, Hopson received a "needs improvement" rating under the section titled "Managing Your Assignments." Her supervisor's comments explain that, "[Hopson] needs to work at managing her assignments better. Although she completes the necessary documentation in terms of project plans/requirements, she is lazy about doing the necessary project planning." (Hop. Dep.Ex. 5)

On or about May 4, 1988, Hopson's overall performance rating was reduced to "needs improvement," and she was placed on an "action plan" for 60 days. Continental places employees who are not performing their jobs adequately on action plans to help them to improve their performance deficiencies. Hopson was removed from the action plan on July 18, 1988.

In Hopson's annual performance evaluation for the period from April 1988 to April 1989, she received a "low competent" rating regarding her understanding of the systems she supported; and in her annual performance rating for April 1989–April 1990, Hopson's supervisor noted that she needed "further development in completing test plans, test schedules and expected results for various system projects." (Hop.Dep.Ex. 7)

Although she received an overall rating of "competent" in her April 1990 through April 1991 performance evaluation, the review indicates that Hopson required "detail [sic] direction and support," required a "significant amount of direction in developing the Method/I Requirements documents," needed to be more cognizant of priorities and needed to respond with more timely and accurate results. Similarly, in her performance evaluation for the period from April 1991 through April 1992, Hopson's supervisor noted that she "needs to be more attentive in following up on production reports routed to her...." (Hop.Dep.Ex. 9)

Hopson's April 1992–April 1993 review indicates her supervisor's opinion that Hopson "could have demonstrated more initiative towards improving the system by actively pursuing and/or making recommendations for moving test jobs to the production environment." (Hop.Dep.Ex. 10) And in the last evaluation completed prior to her termination—the evaluation for the period from April 1993 to January 1994—Hopson's overall performance was rated a "3," signifying that Hopson's work met "the minimum expected level for the position." (Hop.Dep.Ex. 11)

At the time of her termination in November 1994, Howell considered Hopson's perfor-

mance to be only at the minimum competency level.

Yet, despite the aforementioned criticisms and/or complaints contained in Hopson's annual performance evaluations and the consistent rating of Hopson's work as minimally competent, Hopson was given a merit increase in her salary during each year of her employment at Continental.

### B. Hopson's Termination As Part Of A Reduction–In–Force

In October 1994, Vince Grochocinski ("Grochocinski"), head of the CRG, informed the systems department that CRG had decided to switch from Continental's MAC system to a different system provided by an outside vendor. Given that the MAC Group's function primarily had been to enhance and to maintain the MAC system, CRG's decision to phase out the MAC system rendered the MAC Group superfluous.[1]

Juenger, as the ultimate supervisor of the MAC Group, was charged with the responsibility of making systems department personnel adjustments because of Grochocinski's and CRG's decision to phase out the MAC system. In Juenger's professional judgment, only one of the three MAC Group team members needed to be retained by Continental to perform the minimal maintenance work required on the MAC system pending full and final introduction of the replacement system. Accordingly, Juenger decided to retain Jordan and to terminate Hopson and Shniderman.[2]

According to Juenger, his decision to retain Jordan was based on a number of interrelated factors. Jordan was the team leader of the MAC Group and had the strongest leadership skills and technical expertise of the three MAC Group team members. Further, Jordan was the only MAC Group team member to have participated in the original design and implementation of the MAC system and, as a result, she had the greatest working knowledge of that system.

Juenger believed that Jordan's superior technical knowledge not only would allow her to perform the small amount of maintenance work on the MAC system needed in the short term, but would also allow Jordan to assume new responsibilities in the Commercial Lines Group following elimination of the MAC system.

Significantly, Hopson admits that she knew less about the MAC system than did Jordan, and Hopson recognizes Jordan to be a capable and qualified individual. In fact, while working in the MAC Group, Hopson often looked to Jordan for direction and guidance. Moreover, throughout their concurrent employment at Continental, Jordan consistently received better reviews and higher overall ratings than those received by Hopson.

### C. Hopson's Treatment At Continental

Hopson never heard Juenger, Howell, Grochocinski or any other member of Continental management make a racially offensive or derogatory remark about African–Americans generally or about Hopson specifically. Similarly, Hopson never heard Juenger, Howell, Grochocinski or any other member of Continental management make a negative remark about Hopson's or any Continental employee's age.

Hopson believes that she was the victim of race and/or age discrimination based exclusively on the following: (1) Juenger chose to retain Jordan, who was 37, while electing to dismiss Hopson, Shniderman and Gonzalez, all of whom were over 40; (2) Hopson's "duties were assumed by one or more of [Continental's] younger employees, most if not all of whom are less than 40 years of age, and most if not all of whom are white" (Compl.¶ 14); (3) in December 1992, Hopson overheard a conversation between Howell and another Continental employee, Bill Astor ("Astor"), in which Howell purportedly indicated his disapproval of Continental's "new"

---

1. Grochocinski did not know Hopson, was unaware of her age, and did not know that she, in particular, would be discharged when he made the decision to phase out the MAC system.

2. A third Continental employee, Peter Gonzalez, a Hispanic man employed in Continental's Specialty Operations Group, was also terminated as a result of CRG's decision to do away with the MAC system.

policy of encouraging managers to hire "youngsters with PC knowledge over older people with mainframe knowledge"; and (4) the majority of people in a resume writing class offered by Continental and attended by Hopson following her termination were black and appeared to Hopson to be over 40.

## DISCUSSION

### A. Standards for Summary Judgment

Summary judgment is appropriate where the pleadings, answers to interrogatories, admissions, affidavits, and other materials show that there is "no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only genuine disputes over "material facts" can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material facts" are those that might affect the outcome of the suit under governing law. *Id.* A "genuine issue" exists if there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511. When considering a motion for summary judgment, the Court must view the facts, and all inferences drawn from the facts, in the light most favorable to the nonmovant. *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991); *Roman v. U.S. Postal Service*, 821 F.2d 382, 385 (7th Cir. 1987).

### B. Hopson Cannot Demonstrate The Existence Of Genuine Issues Of Material Fact With Respect To Her Discrimination Claims

A plaintiff in an age and/or a race discrimination case may attempt to prove her claim in one of two ways; she either may present direct evidence of discrimination or utilize the familiar burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Hopson attempts to proceed under the indirect, *McDonnell Douglas* method of proof.

Under the *McDonnell Douglas* framework, Hopson first must establish, by a preponderance of the evidence, a prima facie case of race and/or age discrimination. Given that Hopson's termination was part of an overall reduction-in-force ("RIF") at Continental, to state a prima facie case, Hopson must prove that (1) she was a member of a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she was terminated; and (4) sufficient evidence exists which creates an inference that her termination sprang from the "legally forbidden ground" of age or race discrimination. *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996); *Chiaramonte v. Fashion Bed Group, Inc.*, 932 F.Supp. 1080, 1087 (N.D.Ill.1996).

If Hopson makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to Continental to come forward with evidence of a "legitimate, nondiscriminatory reason" for discharging Hopson. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 302 (7th Cir.1996). Hopson "must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Significantly, throughout the *McDonnell Douglas* analysis, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (as quoted in *Testerman*, 98 F.3d at 303).

■ Here, Continental correctly concedes that Hopson has established the first three elements of prima facie case of age and/or race discrimination, as Hopson has shown that (1) she is a member of a protected class (African–Americans and/or persons over the age of 40); (2) she was meeting Continental's legitimate expectations by performing her job at the minimum competency level required by Continental; and (3) she was terminated as a result of CRG's decision to eliminate the MAC system. Yet, whether assessed with respect to the fourth prong of the prima facie test or with respect to the

required showing of pretext, Hopson has failed to come forth with admissible evidence sufficient to permit a reasonable jury to conclude that her termination was motivated, in part, by age and/or race discrimination.

Continental unquestionably has met its burden of producing admissible evidence of a legitimate, nondiscriminatory reason for firing Hopson while retaining Jordan as part of a RIF—Jordan possessed superior technical knowledge, greater leadership skills and higher job performance ratings than did Hopson, making Jordan, in Juenger's view, the more desirable and logical choice for retention following the RIF. Thus, to survive Continental's present motion for summary judgment, Hopson must offer evidence tending to prove that Continental's proffered reason either is "factually baseless," was not the actual motivation for Hopson's discharge, or was insufficient to motivate the Hopson's termination. *Testerman,* 98 F.3d at 303; *Wolf v. Buss (America), Inc.,* 77 F.3d 914, 919 (7th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996). Hopson's burden in this regard recently was described by the Seventh Circuit as follows:

> In this case, involving an RIF, [Plaintiff] should not be required to produce evidence tending to prove that [Defendant's] explanation is a "lie" in the sense of being a complete fabrication. Rather, his ultimate burden is to establish that age "tipped the balance" in favor of discharge. Thus, he need not disprove the fact that [Defendant] had reason to complain of his performance. In an RIF, it is foreordained that some employees will lose their jobs; and, for all but the most exceptional employee, the defendant inevitably will be able to point to some imperfection as a reason for the discharge. But when age enters into the calculus to such an extent that the employer fires an employee who otherwise would have survived an RIF, the ADEA has been violated. At the same time we deal with small gradations, with an employer's subjective comparison of one employee to another, and it is incumbent upon us to remember that what is at issue is not the wisdom of an employer's decision, but the genuineness of the employer's motives.... [Plaintiff's] task is to provide some evidence which would support an inference that, given his shortcomings as an employee, he nevertheless would not have been fired—would not have been ranked below other employees—"but for" his age.

*Testerman,* 98 F.3d at 303–04 (citations omitted).

Hopson does not, and cannot, point to any evidence to suggest that Juenger's explanation for retaining Jordan instead of Hopson is "factually baseless" or "unworthy of credence"; in fact, it is undisputed that Jordan was the MAC Group team leader, was intimately involved in the original design and implementation of the MAC system, had the strongest leadership skills and technical expertise of the three MAC Group team members, and was highly regarded both by Continental management and by Hopson. Instead, as previously indicated, Hopson points to four "facts" which she maintains demonstrate that Continental impermissibly considered her age and race when deciding to discharge her.

First, Hopson notes that both employees terminated by Continental as a result of CRG's decision to eliminate the MAC system—Hopson and Shniderman—were over 40 years old, while Jordan, who was retained by Continental, was only 37 years old. Even viewed in the light most favorable to Hopson, this fact reveals nothing. Had Jordan's job performance and/or skills been equal to or lesser than Hopson's or Shniderman's, then the fact that the younger Jordan was the only MAC Group member retained by Continental would have been telling; yet, the evidence firmly establishes that, age aside, Jordan's abilities and performance consistently were greater than Hopson's and Shniderman's. Under such circumstances, Jordan's, Hopson's and Shniderman's respective ages in no way support an inference of discrimination:

> [The company] does not claim that [the plaintiff] was dismissed because of poor performance, but rather as a result of a Darwinian struggle among three [employees] for two positions. The weakest lost. The market, like the jungle to which it is sometimes compared, is pitiless. Nothing

in the age discrimination law provides tenure to competent older workers. They can be let go for any reason, provided only that the reason is not their age. They can be let go because they are not quite as good as someone else who can do their job, even if that someone else is a young man.

*Partington v. Broyhill Furniture Indus., Inc.,* 999 F.2d 269, 271 (7th Cir.1993); *see also Testerman,* 98 F.3d at 304–05, 306; *Lubkeman v. Commonwealth Edison Co.,* 877 F.Supp. 1180, 1185 (N.D.Ill.1995); *Morgan v. Harris Trust & Sav. Bank of Chicago,* 867 F.2d 1023, 1028 (7th Cir.1989).

Second, Hopson asserts that her job responsibilities were assumed after her termination by one or more younger Continental employees, most of whom were white. This bald assertion in no way advances Hopson's case, as (1) Hopson neither offers any concrete evidence to support her allegation of reassignment nor specifically names any Continental employees to whom her work was reassigned, and (2) Hopson's reassignment claims are wholly illogical in light of the undisputed fact that Hopson's duties as part of the MAC Group were no longer needed by CRG after elimination of the MAC system. Indeed, even Jordan, the only younger employee identified by Hopson to have assumed some of Hopson's duties, ultimately was reassigned to the Commercial Lines Group following elimination of the MAC system. Thus, Hopson's unsupported claims of reassignment do nothing to demonstrate the existence of a genuine issue of material fact as to Continental's motives in discharging Hopson.

■ Hopson next alleges that she overheard a conversation between Howell and Astor in December 1992 in which Howell purportedly indicated his disapproval of Continental management's desire to hire "youngsters with PC knowledge over older people with mainframe knowledge." According to Hopson, this conversation reveals a "policy" of Continental to replace older employees with younger workers—a "policy" that ultimately was responsible for her termination. Even assuming, as we must, that this conversation took place, that Hopson's understanding of Howell's remarks is correct, and that those remarks reveal Howell's understanding

that he was to hire "youngsters" instead of "older people" (not merely persons with "PC knowledge" instead of persons with "mainframe knowledge"), Howell's statement is insufficient to permit a reasonable inference that Hopson was terminated because of her age. First, the decision to terminate Hopson was made by Juenger, not Howell; and nothing in Howell's statement indicates that Juenger was aware of Continental's unwritten policy or that Juenger was likely to comply with that policy. In the absence of any specific evidence to suggest that Juenger wanted to terminate older employees or was informed of the alleged company policy by Howell or someone else, it would be unreasonable for a jury to infer from Howell's statement that Hopson's age was a determining factor in Juenger's decision to terminate Hopson. *See. e.g., Testerman,* 98 F.3d at 301; *Oxman v. WLS–TV,* 12 F.3d 652, 659–60 (7th Cir.1993); *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1412–13 (7th Cir.1984). Second, Hopson "has failed to provide the requisite nexus between the statements made by the defendant and the demotion of the plaintiff to demonstrate that plaintiff's [age] was a 'substantial factor' in the defendant's decision," *Smith v. Firestone Tire & Rubber Co.,* 875 F.2d 1325, 1330 (7th Cir.1989), as Howell's statement was made nearly two years prior to Hopson's termination and was made during a "casual" conversation between co-workers (rather than during a formal meeting). As noted by the Seventh Circuit, "[I]n order to suffice as evidence of [discriminatory] animus in support of a claim of disparate treatment, the [discriminatory] remarks must be relatively contemporaneous to the termination of employment and must be 'related to the employment decision in question.'" *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1116 (7th Cir.1992)(quoting *McCarthy v. Kemper Life Ins. Cos.,* 924 F.2d 683, 686–87 (7th Cir.1991)); *see also Weisbrot v. Medical College of Wisconsin,* 79 F.3d 677, 684–85 (7th Cir.1996); *Shager v. Upjohn Co.,* 913 F.2d 398, 402–03 (7th Cir.1990); *Smith,* 875 F.2d at 1330; *La Montagne,* 750 F.2d at 1412–13. In short, Howell's statement in December 1992 raises nothing more than a "metaphysical doubt" as to the veracity of

Continental's stated reason for discharging Hopson. Such a "metaphysical doubt" is insufficient to constitute the existence of a genuine issue of material fact for trial. *See Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir.1988) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)).

Finally, Hopson points to the fact that "most" of the people attending a resume class offered by Continental were African–American and, in her estimation, over 40 years old. Yet, this "fact" is of little value given that (1) Hopson did not actually know the other people in her resume class and, consequently, could only guess at those people's ages, and (2) Hopson does not know how many non-African-American, under 40 year-old, discharged Continental employees either attended resume classes other than the one attended by Hopson or elected not to attend any resume classes at all.[3]

In sum, Hopson can offer no credible evidence from which a rational trier of fact could determine that Continental's explanation for its decision to terminate Hopson (and to retain Jordan) as part of a legitimate RIF was a pretext for intentional race and/or age discrimination. Accordingly, this Court grants Continental's motion for summary judgment.

### CONCLUSION

For the foregoing reasons, Continental's motion for summary judgment is granted in its entirety. Hopson's claims for race and sex discrimination are dismissed with prejudice.

---

**3.** As this fact appears to be the only evidence offered by Hopson in support of her race discrimination claim, that claim must fail. The mere fact that Hopson is African–American and was terminated by Continental is not enough to raise the reasonable inference that Continental intentionally discriminated against Hopson because of her race. Such an inference is particularly unreasonable in light of the facts that (1) Jordan—the employee retained by Continental after the RIF—also is African–American, and (2) Shniderman, who was discharged along with Hopson, is Caucasian.