**Mary A. EGAN, Plaintiff,**

v.

**PALOS COMMUNITY HOSPITAL,
Defendant.**

**No. 94 C 7617.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 21, 1995.

Donald J. Parker, Law Office of Donald J. Parker, Ltd., Downers Grove, IL, for plaintiff.

Joan E. Gale, Frederick T. Smith, Seyfarth, Shaw Fairweather & Geraldson, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Mary A. Egan ("Egan") sues defendant Palos Community Hospital ("PCH") for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq.* Egan alleges that her age was a motivating factor in several adverse employment actions taken by PCH toward her. Pursuant to Rule 12(b)(6), PCH moves to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is granted.

## BACKGROUND

Egan was employed as a Registered Dietitian with PCH since March of 1965. For over twenty years Egan performed her job in a competent manner and satisfied PCH's performance standards. Am.Compl. ¶ 13. In April of 1985, one year after receiving an excellent job evaluation, Egan's superiors told her that "only young people could make changes and that a lot of changes had to be made." Am.Compl. ¶ 14. In February of 1986, she was directed to resign as Director of Nutrition and Food Service and accept a position as a Staff Dietitian at a reduced hourly rate. Am.Compl. ¶ 16. Jamie Shepherd, a women in her twenties, replaced her. Am.Compl. ¶ 17. In September of 1987, Egan's position was changed again to that of Operation Analyst. Am.Compl. ¶ 19. Three years later, on approximately October 18, 1990, "plaintiff's pay grade was lowered from grade 11 to grade 4, the effect of which eliminated any chance of a pay increase for approximately seven years." Am.Compl. ¶ 20. During the period since her forced resignation as Director of Nutrition, PCH continuously subjected Egan to demotions, reductions in pay, and exclusion from employment duties appropriate to her professional experience.

In early June of 1992, Egan was "informed by her supervisor that her current job may be downgraded once again." Am.Compl. ¶ 21. At the time Egan was informed that her job was to be downgraded, there were other positions available in her field for which she was qualified, but because of her age, those positions were assigned to others who were not in the protected age category. *Id.* On November 2, 1992, Egan filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging that PCH discriminated against her on the basis of her age.

PCH challenges Egan's complaint on several interrelated grounds. In the first place, PCH contends that all of Egan's allegations pertaining to events predating her notification in June of 1992 that her job may be downgraded are time barred. Second, PCH contends that Egan's timely allegation that in June of 1992 she was informed that her job *may* be downgraded does not state a claim upon which relief can be granted. Finally, in response to Egan's efforts to invoke the "continuing violation" doctrine, PCH argues that the doctrine is inapplicable to the facts as alleged by Egan and that there is no timely alleged violation that can serve as the anchor claim for Egan's otherwise time barred allegations. In this latter regard,

PCH contends that Egan's "failure to promote" claim, which is articulated in her response to PCH's motion to dismiss, falls outside the scope of the charge of discrimination Egan filed with the EEOC. For the reasons that follow, we agree that Egan's complaint must be dismissed.

### ANALYSIS

*Rule 12(b)(6) Standards*

█ A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). In considering this question, all well-pleaded facts are taken as true, all inferences are drawn in favor of the plaintiff and all ambiguities are resolved in favor of the plaintiff. *Id.*

*Timeliness, Continuing Violation & the Scope of the EEOC Charge*

█ Under § 626(d)(1) of the ADEA, a party must file a charge of discrimination "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1). In a "deferral state" such as Illinois, the time for filing a charge is extended to 300 days. 29 U.S.C. § 626(d)(2); *see Stark v. Dynascan Corp.*, 902 F.2d 549, 551 (7th Cir.1990).

Egan did not file a charge until November 2, 1992. Therefore, as PCH argues, Egan's claims based on events that occurred prior to approximately May of 1992 are time barred unless saved by a tolling doctrine.[1]

█ In order to circumvent the untimeliness defense raised by PCH with respect to the events predating May of 1992, Egan attempts to invoke the so-called continuing violation doctrine.[2] Egan's "argument" is conclusory and unsupported by any specific facts. The pertinent passages of Egan's memorandum in opposition to the motion to dismiss are as follows:

The events described in Plaintiff's complaint are intended to allege a continuing pattern of discrimination on account of Plaintiff's age from her forced resignation as director in 1985 until she filed her charge with the EEOC in November of 1992.

Although limitations periods are ordinarily triggered at the time a discriminatory act occurs, the limitations period will be tolled during continuing violations. Thus, where an employer continues discriminatory activities during the limitations period and engages in a series of discriminatory acts at least one of which occurs within the limitations period, the limitations period is tolled as to the earlier discriminatory acts. [citations omitted]

. . . . .

It is the gist of Plaintiff's complaint that she was summarily demoted and forced to resign her position as Director of Food

---

1. Egan's complaint sets out a number of events that occurred during the course of her 27 year employment at PCH. Most of the events suggesting discrimination date back to the mid–1980s (in particular, 1985 through 1987); additionally, Egan complains that in October of 1990, her pay grade level was lowered. The next event that Egan complains about occurred in June of 1992 when she "was informed by her supervisor that her current job may be downgraded once again, which threat was part of a continuing effort to force Plaintiff's resignation." Am.Compl. ¶ 21. For ease of exposition, this opinion shall simply speak in terms of "events predating May of 1992" (or some similar expression) to refer to any adverse employment events that occurred more than 300 days prior to Egan's filing of her EEOC charge.

2. Judge Posner has indicated that a separate "continuing violation" doctrine is of questionable utility given that ADEA's (as well as the other antidiscrimination statutes') statutes of limitations are administered in accordance with the doctrine of equitable tolling and therefore a separate doctrine of continuing violation amounts to an unnecessary "multiplication of concepts." *See Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281–82 (7th Cir.1993). Nevertheless, we employ the "continuing violation" nomenclature because it is so firmly embedded in this Circuit's case law; however, in applying that doctrine, we are mindful of Judge Posner's observation that it is but a specific example of equitable tolling.

Services in April of 1985 by a supervisor who stated at the time that her age was a factor, perhaps the only factor, in his decision. She was reduced in responsibilities and salary, at first with promises of future reinstatement. Eventually, however, she was subjected to threats of future demotions and denied any opportunity to work at the level and for a salary for which she was qualified.... The treatment ... is continuing discrimination on account of her age which demonstrates a pattern or series of similar discrete violations of the Age Discrimination in Employment Act.

Pl.'s Mem.Opp.Mot.Dis. at 4. As we shall explain, Egan's complaint, even as buttressed by her memorandum, cannot support her invocation of the continuing violation doctrine.

█ Under the continuing violation doctrine, acts of discrimination that are otherwise time-barred may be actionable under certain limited circumstances. Drawing on its earlier opinion in *Stewart v. CPC Int'l, Inc.*, 679 F.2d 117 (7th Cir.1982), in *Selan v. Kiley*, 969 F.2d 560 (7th Cir.1992), the Seventh Circuit outlined three viable theories under which a plaintiff may successfully appeal to the continuing violation doctrine:

The first theory stems from cases usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred. Courts have tolled the statute in such cases for equitable reasons similar to those underlying the federal equitable tolling doctrine.... The second theory stems from cases in which the employer has an express, openly espoused policy that is alleged to be discriminatory.... The third continuing violation theory stems from cases in which the plaintiff charges that the employer has, for a period of time, followed a practice of discrimination, but has done so covertly, rather than by way of an open notorious policy.... In such cases the challenged practice is evidenced only by a series of discrete, allegedly discriminatory, acts. This brand of continuing violation has also been referred to as a "serial violation," *Mack* [*v. Great*

*Atlantic and Pacific Tea Co., Inc.*], 871 F.2d [179] at 183 [ (1st Cir.1989) ], and as a "pattern of ongoing discrimination." *Santos v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 641 F.Supp. 353, 357 (N.D.Ill.1986).

*Selan,* 969 F.2d at 565.

As is plain from the above-quoted passages from Egan's responsive memorandum, she makes no effort to identify which continuing violation theory she believes controls her suit. However, her statement that "[t]he treatment to which she was subjected ... is continuing discrimination ... which demonstrates a pattern or series of similar discrete violations...." leads this Court to believe that she means to invoke the third theory outlined in *Selan.* In its reply memorandum, PCH guessed that Egan was seeking to invoke the first continuing violation theory. However, we find nothing either in the complaint or in Egan's response memorandum to indicate that the essence of her position is that PCH's decision-making process made it difficult to pinpoint when the particular violations occurred. Nor do we find any basis—either in the complaint or in Egan's memorandum—to conclude that she is contending that PCH maintained an express, openly espoused policy that is alleged to be discriminatory. Thus, we conclude that the only potentially relevant continuing violation theory in this case is the third.

█ In *Selan*, the Seventh Circuit adopted the Fifth Circuit's suggestion as to the pertinent factors to consider in determining whether the defendant's acts were " 'related closely enough to constitute a continuing violation' or were 'merely discrete, isolated, and completed acts which must be regarded as individual violations.' " *Selan,* 969 F.2d at 565 (quoting *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983)). In particular, those factors are: (1) subject matter—"Do the alleged acts involve the same type of discrimination tending to connect them in a continuing violation?" *id.;* (2) frequency—"Are the alleged acts recurring (e.g., a bi-weekly paycheck) or more in the nature of an isolated work assignment or employment decision?" *id.;* and, (3) degree of permanence—"Does the act have the degree of permanence which should trigger

an employee's awareness of and duty to assert his or her rights?" *Id.* Of these three factors, the third is the most significant. *Id.* As explained in *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989):

> What justifies treating a series of separate violations as a continuing violation? Only that it would have been unreasonable to require the plaintiff to sue separately on each one. In a setting of alleged discrimination, ordinarily this will be because the plaintiff had no reason to believe he was a victim of discrimination until a series of adverse actions established a visible pattern of discriminatory treatment.

*Id.* at 1310.

The allegations of Egan's complaint fail on all three of these factors, most notably, the third.[3] Based on the allegations of her complaint, it cannot be doubted that Egan reasonably should have known that she was the subject of discriminatory employment decisions as early as February of 1986 when she was directed by her supervisor to resign as Director of Nutrition and Food Service. As Egan chronicles in her complaint, this directive was the culmination of a series of events that began the previous March when her supervisor allegedly told her that a lot of changes had to be made and that only young people could make changes. Am.Compl. ¶ 14. About a month later, in April of 1985, she received a poor performance review from her supervisor, who indicated that his relationship with Egan was characterized by "poor personal rapport and no climate of cooperation." Am.Compl. ¶ 15. The next February, Egan was forced to resign her position. That event certainly had a degree of permanence that should have triggered Egan's awareness of and duty to assert her rights. At that point in time, Egan should have been aware that she was a victim of discrimination—particularly in view of the supervisor's comment to her, which plainly evidenced age-based animus; or at the very

least, two weeks later when a woman in her twenties filled her former Director position, Egan had a duty to assert her rights.

Egan also alleges that "[i]n late 1986, Ms. Lynette Jones, a woman in her forties became the Assistant Director of Therapeutics." Am.Compl. ¶ 18. Although it is not at all clear from the complaint, we read this allegation to imply that Egan was passed over for the Assistant Director position. Once again, this event has that degree of permanence that should have triggered Egan's awareness of and duty to assert her rights—particularly in view of her supervisor's age-based remark. Similarly, with respect to Egan's allegation that in October of 1990, her pay grade level was lowered, we find that in view of all of the foregoing Egan cannot plausibly maintain that she had no reason to believe she was a victim of discrimination. Accordingly, she was under a duty to assert her rights at that time if she did not want to lose them.

Insofar as the continuing violation doctrine is predicated on the equitable notion that a limitations period ought not begin to run until a reasonable person would be aware that her rights had been violated, *see Moskowitz*, 5 F.3d at 282; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 446 (7th Cir.1994), the doctrine is plainly inappropriate here. Under the facts of this case, we must conclude that Egan was sufficiently on notice of a possible violation of her rights that she had a duty to assert them—or lose them as time-barred. Thus, as PCH contends, Egan may not invoke the continuing violation doctrine to bring stale claims within the scope of her instant federal complaint.

██ We next address PCH's contention that not only is the continuing violation doctrine inapplicable but it also fails because there is no actionable claim that is within the limitations period—that is, there is no viable "anchor claim" that connects to the otherwise time-barred claims. Indeed, as we shall see,

---

**3.** Because we find the third factor dispositive in this case, we shall not engage in an extensive discussion of the other two. However, for the sake of thoroughness, we note here that we do not find that the allegations of Egan's complaint allege recurring conduct nor do we find that the various adverse employment actions alleged by

Egan constitute the same type of discrimination tending to connect them as one continuing violation. Rather, viewed as a whole, they include quite distinct forms of adverse employment action: forced resignation, failure to promote, a change in position with a concomitant loss of benefits, and a pay downgrade.

not only does this argument foreclose Egan's reliance on the continuing violation doctrine but it also leads to the conclusion that her complaint must be dismissed.

■■■■ The continuing violation doctrine requires that at least one violation be committed within the limitations period so as to serve as an "anchor for the earlier conduct." *Doe,* 42 F.3d at 446. In the instant case, two possibilities exist for the anchor claim: (1) Egan's allegation that in June of 1992 she was told that her current position may be downgraded, and (2) her failure to promote claim as articulated in her response memorandum. Neither claim can withstand scrutiny. With respect to the former, we find that there has been no actionable adverse employment decision. The mere threat that one's position *may* be downgraded simply does not amount to an adverse employment *action.* With respect to the latter, we agree with PCH that Egan's purported failure to promote claim is outside the scope of her EEOC charge of discrimination.

*Scope of the EEOC Charge*

■■■■ It is well established that "to prevent circumvention of the EEOC's investigatory and conciliatory role, only those claims that are fairly encompassed within an EEOC charge can be the subject of a resulting lawsuit." *Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1003 (7th Cir.1994); *see also Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.1985). The standard for determining whether an EEOC charge sufficiently encompasses the allegations of a subsequent federal complaint "is a liberal one in order to effectuate the remedial purpose of [the antidiscrimination statutes]." *Babrocky,* 773 F.2d at 864. The issue is simply whether the claims of discrimination asserted in federal court are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (en banc)). Notwithstanding the liberality of the standard, Egan's failure to promote claim fails the test.

■■ At this point, we must digress briefly to address a procedural issue. In responding to PCH's motion to dismiss, Egan quoted to the Court a passage from an exhibit attached to her affidavit submitted to the EEOC in support of her charge of discrimination. Egan contends that the passage reveals that her failure to promote claim was fairly within the scope of her EEOC charge. By inviting the Court to consider matters outside the complaint, Egan implicitly invites the Court to treat PCH's 12(b)(6) motion as one for summary judgment pursuant to Rule 56. *See* FED.R.CIV.P. 12(b). In response to Egan's submission, PCH, in turn, submitted a copy of Egan's EEOC charge and indicated its desire that the Court treat the motion as one for summary judgment. Although this Court rarely honors such invitations, we shall do so in the instant case because we find that both parties had "reasonable opportunity to present all material made pertinent to [a summary judgment] motion." FED.R.CIV.P. 12(b). Egan certainly had such opportunity—after all it was she who opened the door by presenting matter outside the complaint. Having done so, she can hardly complain that she did not have an opportunity to present all of her evidence. Given the district court's congested dockets, sound judicial administration does not permit litigation to proceed in a piecemeal fashion; in particular, a litigant cannot present some evidence, holding back other evidence, and then—if not successful in the first battle—bring in the reserves for a second assault. Similarly, PCH cannot complain; it has requested that we treat its motion as one for summary judgment. Accordingly, we shall consider the materials submitted by the parties and treat PCH's motion as one for summary judgment. We turn first to a consideration of Egan's EEOC charge which we shall quote at some length because its content is so critical to our analysis.

The charge begins by noting that Egan has been employed at PCH for 27 years and that "[a]fter serving as the Director of Nutrition and Food Services for 20 years, I was demoted to the position of Staff Dietitian. Since then, I have been further demoted and harassed because of my age...." EEOC Charge ¶ I. Next, Egan explains that in 1986 Charles Moyer demoted her from her Director position after having previously

stated that a lot of changes had to be made and only young people could make them. *Id.* ¶ II. She adds that "[s]ince that time I have been harassed by Respondent." *Id.* In paragraph III of the charge, Egan sets forth eight subparagraphs that complete the following introductory sentence:

> I believe that I have been discriminated against because of my age, 63 [date of birth 8/21/29], and retaliated against because I have opposed age discrimination for the following reasons:

*Id.* ¶ III. The eight subparagraphs recount: (A) That Moyer demoted her, after having previously made an age-related comment and that she was replaced by a woman in her twenties; (B) That in 1987, her position as Staff Dietitian was changed to Operations Analysis and that this change made her ineligible for merit based or general pay increases as well as continuing education tuition reimbursement and continuing education activities available to dietitians. She also notes that the Operations Analyst position required only a high school diploma, whereas she held a B.S. degree, was a registered dietitian, and held certain honors; (C) That in October of 1987, her supervisor, Lynette Jones informed her that her pay grade was being lowered from a grade 11 to a grade 4 and that she would receive no pay raises for about seven years. After complaining about this, Egan did receive pay raises in 1991 and 1992; (D) That in January of 1991, Ms. Jones informed her that she was not to have received pay raises in 1990 or 1991 and that a deduction would be made from her paychecks and that her salary would be reduced by $1.90 per hour; (E) That since 1986, management has made comments such as "You are too slow" and "You are not 22 anymore"; that Egan has been routinely excluded from important meetings and her requests to attend continuing education seminars and important meetings were denied. Additionally, job functions were taken away from her; (F) That she has been issued unfair warnings and that her supervisors do not cooperate with her but rather hinder her ability to do a good job; and (G) That her new supervisor gave her an unfair evaluation in March of 1992 and in her written response Egan claimed that the treatment was due to age discrimination.

Thereafter, in May of 1992 another project was taken away from her and in June of 1992 her supervisor informed her that her job may be downgraded again. In the concluding paragraph of her charge, Egan states:

> I believe that Respondent will continue to harass me verbally, in writing and through pay cuts until I am forced to resign or I am discharged.

*Id.* ¶ III(H).

As should be evident from the foregoing, Egan's EEOC charge recites with relative specificity a variety of employment events that support her claim that she was a victim of discrimination. Although the charge expressly refers to demotions, pay cuts, loss of responsibilities and benefits, and verbal harassment, there is no express mention of any failures to promote Egan. Nor is there any basis to infer that such a claim was being advanced; there is, for example, no reference to job openings filled by others or anything else that would convey the impression that Egan sought a particular position and was passed over.

Nevertheless, in support of her contention that her EEOC charge encompassed a failure to promote claim, Egan points a June 15, 1992, memorandum to her supervisor that was submitted to the EEOC as an Exhibit to her EEOC affidavit. The memorandum states:

> With my 27 years of experience as a dietitian with the St. George Corporation (the employer), 20 years of which I served as Director of the Department of Nutrition and Food Service, and my educational background, I am qualified to handle a wide variety of projects and assignments and am eager to take on increased and new responsibilities.

Pl.'s Resp.Mem. at 3–4.

 Egan's EEOC affidavit in support of her EEOC charge—and any exhibits accompanying it—may fairly be considered in assessing the scope of her EEOC charge. As the Seventh Circuit has determined, "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek v. Western & S. Life*

*Ins. Co.*, 31 F.3d 497, 502 (7th Cir.1994). In *Cheek*, the Seventh Circuit expressly found that "in assessing the scope of the EEOC charge, we may consider [the charging party's] statements in a sworn affidavit that she filed in support of the charge." *Id.; see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110–11 (7th Cir.1992) (considering a three page handwritten affidavit submitted to the EEOC as evidence as to the scope of the EEOC charge). However, even when this Court examines Egan's formal charge of discrimination as supplemented by her exhibit, we cannot conclude that the charge fairly encompasses a claim for failure to promote. *See Chambers*, 17 F.3d at 1003 (finding that where the EEOC charge complained only about unequal compensation, the charge did not incorporate pay inequities resulting from promotion denials).

We find that expressing a desire to take on "increased and new responsibilities" is a far stretch from suggesting that one has unjustly been denied promotion opportunities. This is particularly true where, as here, the allegations of the EEOC charge complain of projects and responsibilities being taken away from Egan. Similarly, we find that Egan's statement that in view of her education and experience she is "qualified to handle a wide variety of projects and assignments" in no way implicates a failure to promote claim; instead, the statement quite naturally relates to her charge that she has been unfairly demoted to a position that requires only a high school education and that projects and responsibilities have been taken away from her.

It is instructive to compare the facts of this case with those of *Rush* wherein the Seventh Circuit found that statements contained in the plaintiff's EEOC affidavit broadened the scope of her EEOC charge to include a failure to promote claim. In *Rush*, the plaintiff's EEOC charge merely stated:

> I began my employment as a Part-time word processor on November 11, 1985. I became a Full-time word processor on January 1, 1988. On May 6, 1988, I was told ... that I was being terminated. I believe that I have been discriminated against because of my race, Black.

*Rush*, 966 F.2d at 1108 n. 9. Thus, her charge only specifically referenced her termination and then included a general allegation of race discrimination. However, on the same day that the plaintiff filed her EEOC charge, she submitted a three page affidavit that contained an explicit reference to her employer's allegedly discriminatory promotion policies:

> I would like to state that Sonia Roach (W) was hired in April 1986 as a part time word processor and in 2 months she became a full time employee. I believe that McDonald's has continuously allowed white employees to advance in the company. Blacks have not been allowed to advance as quick.

*Id.* at 1111 n. 23. Relying on this explicit reference to McDonald's promotion policies, the Seventh Circuit concluded that the charge (as supplemented by the EEOC affidavit) encompassed the plaintiff's failure to promote claim. *Id.* at 1111. Egan's oblique reference to her eagerness to take on new responsibilities stands in sharp contrast to the affidavit considered in *Rush*.

### CONCLUSION

For all of the foregoing reasons, we find that Egan has failed to state a claim upon which relief can be granted and that PCH is entitle to judgment as a matter of law. Egan's threatened downgrade—which, as far as the Court can discern, has yet to occur—is not actionable; and, her failure to promote claim lies outside the scope of her EEOC charge. Additionally, all of Egan's claims based on conduct predating May of 1992 are time barred. Although this Court sympathizes with Egan's plight at PCH, and believes that she has endured very difficult times over the past several years, we are unable to provide a federal remedy. Accordingly, PCH's motion to dismiss, treated herein as a motion for summary judgment, is granted. This case is dismissed with prejudice.