Carl BARAKAT, Plaintiff,

v.

TACO BELL, INC., Defendant.

No. 95 C 7729.

United States District Court, N.D. Illinois.

July 16, 1997.

Stuart K. Jones, Stuart K. Jones & Associates, Chicago, IL, for Plaintiff.

Richard Elliot Lieberman, Robert Thomas Zielinski, Joel H. Spitz, Ross & Hardies, P.C., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Carl Barakat ("plaintiff") brought this two-count complaint against Taco Bell, Inc. ("defendant"), alleging that defendant failed to promote him and discharged him on the basis of his national origin (Palestinian), ancestry (Arabian) and religion (Moslem), in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended. Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, the court grants defendant's motion for summary judgment.

### FACTS

Plaintiff was born in Jerusalem and is of Palestinian and Arabian ancestry. He has been a United States citizen since the late 1970s. In May 1988, plaintiff was hired by defendant as a general manager of restaurants in the Chicago area. Plaintiff was aware of defendant's conduct expectations and work rules, which state, in relevant part:

Taco Bell's objective is to ensure that uniform and consistent standards are applied through the constructive discipline program. The purpose of constructive discipline is to communicate what conduct is unacceptable and to specify the corrective action required.

Disciplinary options include ... documented verbal consultation, written consultation, or termination.... The Human Resources Manager and field management will investigate the facts and any special circumstances before making a disciplinary decision ... The Company maintains the policy that any individual's employment can be terminated, with or without cause, and with or without notice[.]

The following work rule violations will result in disciplinary action up to and including termination of employment ...

7. Engaging in horseplay, harassment, or other behavior disruptive to co-workers, customers, or suppliers....

10. Unprofessional conduct that is blatant and intentional.

11. Use of extreme, abusive, or threatening language toward co-workers, customers, or suppliers.

In early 1992, plaintiff indicated to upper management his desire to obtain more responsibility by becoming a market manager, which oversees the performance of the general managers. In August 1992, he began directly reporting to Nick Kallergis ("Kallergis"), the area market manager, and again expressed his interest in the market manager

position. Plaintiff's responsibility increased from managing two stores to managing six stores, more than any other manager.

In the summer of 1994, Babatunde Adeniyi, who reported to plaintiff, complained to Kallergis about plaintiff's use of abusive language, for which Kallergis issued plaintiff a verbal warning. November 9, 1994, Parris Reaves ("Reaves"), another of plaintiff's subordinates, had a confrontation with plaintiff. Three weeks later, in a December 3, 1994, telephone call, Jetha Jones ("Jones"), a recently-hired management trainee in one of plaintiff's stores, told Kallergis that plaintiff had "exploded into a fit of anger" the previous day, and had berated her using language that was "loud, abusive, and profane." Plaintiff denied making the statements.

Following this incident, Kallergis suspended plaintiff and conducted an investigation. Kallergis asked plaintiff to meet him at one of his restaurants on December 5, 1994. At that meeting, Kallergis informed plaintiff that he would conduct a thorough investigation in conjunction with the Human Resources department. On December 8, 1994, Kallergis and Paul Ramsey ("Ramsey"), the Human Resources Manager, met with plaintiff, telling him that three employees, Jones, Reaves, and Peter Guyse–Crew, ("Guyse–Crew") had "gone on record" with written statements alleging that plaintiff had used loud and profane language at times while conducting business in the restaurant. Ramsey informed plaintiff that this behavior violated defendant's work rules, which required managers to maintain working environments free of harassment and intimidation. Plaintiff acknowledged company standards, but denied all allegations of abusive conduct, suggesting that defendant poll additional employees from his restaurants.

Later that afternoon, Ramsey and Kallergis drove to another of plaintiff's restaurants and randomly selected three employees to be interviewed regarding plaintiff's management style. Three of plaintiff's subordinates, Samantha Long, Santina Coley and Carla Martinez, verified plaintiff's regular use of profanity and described a work environment where employees feared plaintiff's presence. Ramsey and Kallergis terminated plaintiff's

employment on that day. On March 9, 1995, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendant discriminated against him on the basis of his race, religion,.and national origin.

## SUMMARY JUDGMENT

Summary judgment should not be granted unless there is no genuine issue of material fact. Fed.R.Civ.P. § 6(c). In determining whether a genuine issue of material fact exists, the court is to construe the evidence in the light most favorable to the nonmovant. This standard places the initial burden on the movant to identify those portions of the record on file which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. § 6(c). The court must read the facts in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 251–53, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This standard is applied with added vigor in employment discrimination cases, where intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). The granting of summary judgment to an employer is appropriate, however, if on the facts before the court, taken as favorably to the plaintiff as the evidence permits, no rational jury could conclude that the employee was fired due to discriminatory animus. *See Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990).

## DISCUSSION

I. *Failure to Promote Charge*

■ Defendant's motion for summary judgment states that the failure to promote claim was not part of the EEOC charge and thus, it cannot be raised in the complaint. As this court has held previously, claims that were not raised in an EEOC charge or that are not "like or reasonably related to" the claims asserted in the charge, are barred. *See Siciliano v. Chicago Local 458–3M*, 946

F.Supp. 596 (N.D.Ill.Nov.25,1996) (Gettleman, J.). If claims asserted in a judicial complaint are distinct from those alleged in the underlying EEOC charge, they lie outside the scope of plaintiff's charge and must be dismissed for failure to exhaust administrative remedies. *See Steffen v. Meridian Life Ins. Co.*, 859 F.2d §534, 546 (7th Cir. 1988), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989). A party must expressly mention failures to promote in the EEOC complaint to have a basis on which to infer that such claim was being advanced. *See Egan v. Palos Community Hosp.*, 889 F.Supp. 331 (N.D.Ill.1995). Plaintiff's charge states only that he was subjected to racial slurs and was suspended and discharged. He does not expressly mention defendant's failure to promote him and thus, defendant has no basis on which to infer that such claim was being advanced. Therefore, the failure to promote claim is precluded.

■ Moreover, even if the failure to promote claim could be construed to be within the scope of the EEOC charge, plaintiff cannot establish a prima facie case of discrimination. To establish a prima facie case of discrimination for failure to promote, a plaintiff must show: (1) that he is a member of a protected group; (2) that he applied for and was qualified for the position sought; (3) that the employer rejected him from the promoted position; and (4) that the employer granted the promotion to another employee who was not in the protected group. *See Sample v. Aldi Inc.*, 61 F.3d 544 (7th Cir.1995). The second, third, and fourth prongs of this test require the existence of a position for which a plaintiff could have qualified and applied.

Although defendant admits that there was "talk" around the office about the creation of such a position, defendant later decided not to create the position. Plaintiff does not provide any evidence to suggest that this decision was made to keep employees of his racial, ethnic, or religious background out of upper management. Therefore, defendant made a simple business decision, an area in which the court usually will not tread. *See Billups v. Methodist Hosp. of Chicago*, 922

F.2d 1300 (7th Cir.1991) ("it is not this court's practice to question an employer's good faith business decision"). Thus, defendant's motion for summary judgment is granted on the failure to promote charge.

## II. *Wrongful Termination Charge*

To establish a claim for wrongful termination, a Title VII plaintiff must ultimately show that race or another characteristic within the ambit of the statute was a determining factor in the decision to discharge. This burden can be met by presenting either direct or indirect evidence of discrimination. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984). When a plaintiff uses the indirect method, as does plaintiff in the instant case, the *McDonnell–Douglas* burden-shifting analysis applies. *See McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell–Douglas* approach, a plaintiff must carry the initial burden of establishing a prima facie case by showing: (1) that he was in the protected class; (2) that he was doing his job well enough to meet his employer's legitimate expectations; (3) that in spite of his performance he was discharged; and (4) that the employer sought a replacement for him. *See Id.* at 802, 93 S.Ct. at 1824. *See also La Montagne*, 750 F.2d at 1409.

If a Title VII plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for discharge. *La Montagne*, 750 F.2d at 1409. If the employer articulates a nondiscriminatory and sufficient reason, the burden of production shifts back to the employee to prove by a preponderance of the evidence that the proffered reason was really a pretext for discrimination. *See Billups*, 922 F.2d at 1302–03. In the instant case, plaintiff barely establishes a prima facie case. While he is a member of a protected class, plaintiff fails to meet the second prong of the *McDonnell–Douglas* test. Plaintiff vehemently denies making any profane comments to Jones[1] or Reaves,[2]

---

1. Jones says that plaintiff stated: "Jetha can you please read this ... take a minute and read ...

this shit. This is unfucking beliable (sic) people talking about flurstation (sic) [frustration?] ...

but has nothing to support his denials other than his own statements. The evidence of plaintiff's misconduct is substantial: Guyse–Crew turned in a complaint [3] and three randomly-selected employees described an extremely unpleasant working situation with plaintiff.[4]

While Ramsey and Kallergis admit that plaintiff's "financials" were acceptable, Ramsey states:

> Mr. Kallergis and I reiterated to [plaintiff] that the overriding issue was not whether he had delivered the sound financial and operation results expected by [defendant], but rather that he had treated his employees in an egregious manner. We informed [plaintiff] that the successful operation of his restaurants did not excuse his unacceptable abuse and intimidation of employees who were equally valuable to [defendant].

Such behavior clearly would not comport with defendant's work rules 7, 10, and 11. Thus, although plaintiff was providing "sound financial and operation results" to defendant, if his subordinates are to be believed, he was not following the express work rules or meeting his employer's legitimate job expectations. Overwhelming evidence was submitted establishing that plaintiff engaged in behavior that was disruptive to co-workers, demonstrated unprofessional conduct which was blatant and intentional, and used extreme, abusive, or threatening language toward co-workers.

■ Plaintiff, however, denies that he made any of the statements attributed to him, and asserts that defendant could not, in good faith, have relied on these statements in its decision to fire him. His denials by themselves may be sufficient to create an issue of fact as to whether he made the inappropriate comments. A determination that an individual is performing a job well enough to satisfy the performance element of the *McDonnell–Douglas* test can be established solely by plaintiff's own testimony about the quality of his work. See *Williams v. Williams Electronics Inc.*, 856 F.2d 920, 923 at n. 6 (7th Cir.1988); *See Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512 (7th Cir.1986).

■ However, even if one assumes, *arguendo*, that plaintiff can establish a prima facie case of discrimination, defendant has articulated a legitimate reason why it terminated plaintiff: it believed the statements of Jones and the other complainants. To prevail on a Title VII race, religion, or national origin claim, plaintiff must prove that race, religion, or national origin was a determining factor in defendant's decision to terminate his employment. See *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). The issue in a Title VII case is not whether the employer's reason is true, but whether the employer honestly believed it to be true and acted on that belief. See *Billups*, 922 F.2d at 1303. The court should not be concerned with whether the employer's decision was wise, logical, prudent, ill-informed, ill-considered, or accurate. Indeed, the Court's only

---

I'll tell them about fucking flurstations ... It flurstationing (sic) when they send you a manager that don't know shit."

**2.** Reaves alleges that plaintiff "erupted" about one of Reaves' decisions, stating:
"What are you doing to Lenora ... why in fuck are you starting shit in my fucking store? ... You're not a manager, I'm the fucking manager.... Let me tell you something. Your (sic) the slowest fucking manager I have ... you don't say shit about Lenora .... if I ever hear anything about you again, your (sic) fucking fired, you hear me?"

**3.** Guyse-Crew alleges: "[plaintiff] would come in and see one little thing wrong and start yelling and cussing at employees in front of customers...."

**4.** From Ramsey's affidavit:

I interviewed three of [plaintiff's] subordinates.... During my three hours of discussions with these employees, a very disturbing description of [plaintiff's] management style appeared. All three employees verified [plaintiff's] regular use of profanity (e.g., "goddamn this," "this is fuckin' bullshit," and "speed the hell up") and described a work environment where employees feared plaintiff's presence. The three individuals stated that they were treated "like animals," that plaintiff hit the wall when frustrated, and that one employee regularly asks to go home to avoid his "explosions."

concern is "whether the decision was honest, *i.e.*, whether the employer believed the proffered reason for the decision." *See Kariotis v. Navistar Int'l Trans. Corp.*, 951 F.Supp. 144 (N.D.Ill. 1997), *citing Helland v. South Bend Comm. Sch. Corp.*, 93 F.3d 327, 330 (7th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Whether the employer was correct in its conclusion is immaterial. *See Willis v. Marion County Auditor's Office*, 118 F.3d 542, 546 (7th Cir.1997). The important question is the honesty, not the accuracy, of an employer's belief. *Id.* (*citing Essex v. United Parcel Serv.*, 111 F.3d 1304, 1311 (7th Cir. 1997)).

In the instant case, it is undisputed that the defendant believed the complaining employees' statements concerning plaintiff's abusive behavior. As the allegations against plaintiff were in clear violation of the work rules and defendant had no reason to doubt the complainants, disciplinary action or even termination could be considered legitimate. An employer's reason for an adverse employment decision need only be "legitimate" in the sense of sufficient to rebut a prima facie case, and need not be a good or a sympathetic justification for the action the employer took. *See Mills v. First Federal Savings & Loan of Belvidere*, 83 F.3d 833 (7th Cir.1996). Thus, defendant's reason rebuts plaintiff's prima facie case.

To establish pretext, a plaintiff must prove that "a discriminatory reason more likely than not motivated the employer or that the employer's proper explanation is incredible." *See Sample*, 61 F.3d at 547. Pretext means "a lie, specifically a phony reason for some action." *See Russell v. Acme–Evans–Co.*, 51 F.3d 64, 65 (7th Cir. 1995). Unlike the second *McDonnell–Douglas* step, at this stage plaintiff's own denials are insufficient to prove pretext—he must present some evidence of that pretext. *See Lubkeman v. Commonwealth Edison Co.*, 877 F.Supp. 1180, 1186 (N.D.Ill.1995). In the instant case, plaintiff fails to establish that defendant's proffered reason for firing him was pretext for discrimination.

Plaintiff begins his pretext argument with his assertion that defendant's refusal to use its progressive discipline program indicates that it made its termination decision in bad faith. While defendant's work rules state that a progressive discipline program exists, it is at defendant's discretion how and if to use that policy. The fact that an employer did not follow a progressive discipline program, without some doubt raised as to his genuineness for not doing so, fails to demonstrate pretext. *See Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 403 (7th Cir.1992) (an employer with a progressive discipline policy is not required to use it).

Moreover, defendant has offered a rational explanation for its decision not to utilize its progressive discipline program with respect to plaintiff. Ramsey stated that he and Kallergis believed the policy would not be effective in plaintiff's case because plaintiff refused to admit that any of the alleged conversations took place and accused the employees of lying. Because plaintiff took absolutely no responsibility for any of the remarks, Kallergis and Ramsey had no confidence that he would change his behavior and thus concluded that progressive discipline would be useless. There is no evidence whatever that plaintiff's race, religion, or national origin motivated this decision.

In another attempt to establish pretext, plaintiff theorizes that defendant created a grand conspiracy to "work him to death," coerce him into another career, and/or trap him into a violation sufficient to terminate him. To support this supposition, plaintiff cites several isolated racial slurs, a computer-generated manager list, verbally abusive store managers who were not terminated, and a series of other bizarre events, all which he believes have defendant's racial animus as the common denominator. However, plaintiff provides no evidence to back his theory or to establish pretext. Subjective beliefs of the plaintiff are insufficient to create a genuine issue of material fact. *Billups*, 922 F.2d at 1303, n. 5. As stated by the Seventh Circuit in *Russell:*

While the practical inability of a plaintiff in a Title VII case to get past summary

judgment unless he presents evidence other than what comes out of his own mouth could be thought troubling ... there is nothing within our power to do that would lighten the burden of the employee without depriving the employer of procedural rights conferred upon him by settled law. 51 F.3d at 70–71. Further, hearsay evidence which does not fall within one of the exceptions to the hearsay rule, such as the majority of plaintiff's "conspiracy" evidence in the instant case, cannot be considered in a summary judgment proceeding. *See Russell,* 51 F.3d at 68.

■ With respect to the "racial slurs" made by Kallergis, plaintiff recalls past conversations during which Kallergis asked why plaintiff did not run a liquor store, remarking that people of Arabian descent frequently own and manage liquor stores. However, these comments were not made in conjunction with or at the time of defendant's termination decision. Further, plaintiff admits that he often had friendly conversations with Kallergis about their nationalities and ancestry, and that he had regularly discussed common acquaintances and relatives of plaintiff who were Arabic and who owned or managed liquor stores or liquor departments in stores. While plaintiff tries to establish a nexus by stating that these remarks were made when he was trying to get promoted, that time frame—on plaintiff's own admission—spanned the full six years of his employment. This is hardly a narrow enough period to suggest a link between the remarks and plaintiff's termination.

■ Further, plaintiff states that after he was terminated, he overheard Kallergis say "that guy is as tough to deal with as Saddam Hussein." Plaintiff admits, however, that he was not sure that Kallergis was even referring to him. Courts have held that stray remarks unrelated to the decisional process are insufficient to establish discriminatory intent. *See Sundaram v. American Flange & Mfg. Co., Inc.,* 1994 WL 27889 at *6 (N.D.Ill.1994). *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 251, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989). Plaintiff must establish a causal connection between the remarks and the decision. *Id.* at 251, 109

S.Ct. at 1791. Plaintiff fails to make that connection here.

In addition, plaintiff produces a list of store managers, made by Kallergis and dated November 13, 1994, which omitted plaintiff and named other managers as running his stores. While the list may be suspicious on its face, Kallergis testified that his older spreadsheet software requires him to change the date manually, which he frequently forgot to do. Kallergis asserts that the list was made after plaintiff was fired, but was dated, due to the software defaults, a month before the termination. Kallergis' explanation is plausible and plaintiff submits no evidence to rebut the testimony.

Plaintiff further alleges that similarly-situated, nonmembers of his class were treated more favorably. Specifically, he notes two other managers, Shentil Vadivelu and Gordon Guerreri, who used profane language and had "track records of verbally abusing employees with impunity." Plaintiff, however, produces no admissible evidence to show that the "track records" existed or that Vadivelu or Guerreri were not punished for any transgressions.

Plaintiff's conspiracy theory continues by accusing defendant of overloading him with a "hyperstressful work load of managing six stores." While it is true that plaintiff managed more stores than any other manager in the area, it is also true that he had strong financial and operational results and had been lobbying for increased responsibility for several years. Defendant claims that it increased his work load because plaintiff was a successful manager who asked for additional responsibility. Plaintiff cannot complain that his employer was trying to "work him to death" so he would quit, when the employer was merely honoring plaintiff's requests and rewarding his ability to manage effectively.

Plaintiff also claims that he was told by Frank Cherravoni, a contractor who had done work for defendant, that he had seen plaintiff's name on a list of employees slated to be fired and had been expressly told by one of defendant's "big shot" employees that the company wanted to fire plaintiff. Plaintiff further alleges that an assigned room-

mate at one of defendant's conventions rifled through his bags for illicit purposes, and claims that defendant tried to set him up to expose the company to sexual and religious discrimination charges. Plaintiff surmises that these attempts, if successful, would have provided defendant with the excuse it needed to legally terminate him. However, plaintiff again has produced only his subjective beliefs rather than admissible evidence to support these allegations. As a result, no pretext has been established and defendant's reason for termination rebuts plaintiff's prima facie case. Therefore, summary judgment is granted in defendant's favor on the wrongful termination charge.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted.