Sheldon H. KONOWITZ,
Plaintiff–Appellant,

v.

SCHNADIG CORPORATION,
Defendant–Appellee.

No. 91–2214.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1992.
Decided May 27, 1992.

Bradley B. Falkof, Mark J. McAndrew (argued), Steven C. Filipowski, Griffin & Fadden, Chicago, Ill., for plaintiff-appellant.

George P. Blake, Carol L. Van Hal (argued), Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Sheldon Konowitz filed suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, after his transfer and subsequent demotion by his employer, Schnadig Corporation (Schnadig). The district court granted summary judgment in favor of Schnadig, and Konowitz appeals. We affirm.

## I. Background

In 1964, Konowitz began working at Schnadig, a company that manufactures and sells furniture. In 1973, he was promoted to Director of Data Processing, Management Information Systems (MIS). In 1978, at the age of 54, he was promoted to Vice President, MIS. His overall performance in this position was consistently rated above average by Schnadig, although he was repeatedly rated average to below average in communication skills.

In January 1988, at the age of 64, Konowitz was transferred to the newly created office of Vice President, Assistant to the President. Schnadig's President and CEO, Donald Belgrad, orally explained to Konowitz the duties of the new position. Konowitz would be primarily responsible for the administrative details of the "Parade of Rooms," a new marketing project. He retained some duties from his former position and, in addition, he was to analyze the performance of the departments under his direction to pinpoint possible areas for expense reductions. Other projects would be assigned as necessary. Belgrad also told Konowitz that he was to act as Belgrad's "eyes and ears," although he did not elaborate on this particular duty. At the time of his new assignment, Konowitz regarded the new position as a promotion. Ravindra Kumar, who was Konowitz's assistant in the MIS department and approximately 20 years younger, succeeded him as Vice President, MIS.

Schnadig had experienced market share decreases since at least 1982. In 1987, the company began looking intensely at cost-cutting measures. During 1987 and 1988, it closed three manufacturing plants and terminated almost 400 plant employees nationwide. Those plants that remained open suffered substantial cutbacks and personnel reductions. Belgrad announced a re-

duction in force (RIF) in July of 1988, and each department head was instructed to cut personnel by 10–percent. As part of the RIF, fourteen positions in Schnadig's Chicago office were eliminated. Among the positions eliminated was the Assistant to the President, held by Konowitz.

On July 25, 1988, Belgrad informed Konowitz that his position was being eliminated, and that he could either accept a demotion to a position as Market Analyst with a salary reduction of $28,500 per year, or he would be terminated. Konowitz accepted the demotion. No other vice presidents were demoted or terminated pursuant to the RIF. Of the fourteen Chicago positions eliminated, eight were management positions. Six of these eight employees were terminated, and three of the six were under the age of 40. Only Konowitz and a 37–year-old woman were demoted rather than terminated. Konowitz was not considered for other positions in the company for which he may have been qualified.

Konowitz filed suit in district court alleging that his 1988 transfer to the Assistant to the President position was nothing more than the first step in a scheme to demote him later because of his age. The alleged scheme was that Schnadig officials knew there was going to be a RIF, and they wanted to get Konowitz out of the way so they could move Kumar up to the higher position. According to Konowitz, rather than having to resort to an abrupt displacement, they created a job for Konowitz by effectively kicking him upstairs. Then, just seven months later, they eliminated the job according to plan. The district court found that the plaintiff's evidence was insufficient to raise an issue that Schnadig's asserted reasons for transferring Konowitz were pretextual, and granted summary judgment to Schnadig.

## II. Analysis

We review *de novo* a district court's grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment is only appropriate if, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990); Fed.R.Civ.P. 56(c).

A plaintiff in an ADEA case must establish that "but for" the motive to discriminate because of his age, he would not have been treated adversely by his employer. *U.S.E.E.O.C. v. Century Broadcasting Corp.*, 957 F.2d 1446, 1450 (7th Cir. 1992). In order to meet his burden of proof, a plaintiff will proceed in one of two ways. He may present direct or circumstantial evidence that his age was the determining factor in the adverse employment action. *Oxman v. WLS–TV,* 846 F.2d 448, 452 (7th Cir.1988). More commonly, he will employ the burden-shifting method outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to claims under the ADEA. *Oxman,* 846 F.2d at 452. Under the burden-shifting method, the plaintiff may establish a prima facie claim of age discrimination by showing that he was:

(1) in a protected class; (2) performing the job satisfactorily; (3) nevertheless the subject of a materially adverse employment action; and (4) others outside of the protected class were treated more favorably.

*Young v. Will County Dept. of Public Aid,* 882 F.2d 290, 293 (7th Cir.1989). If the plaintiff establishes his prima facie case, the employer must articulate a lawful, non-discriminatory reason for the adverse action. Once the employer satisfies this burden of production, the burden remains with the plaintiff to show that the employer's purported reasons are no more than a pretext, "by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *La Montagne v. American Convenience Prods., Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). "If the company gives a reason for its decision that is unrelated to age, the plaintiff must present evidence either that the real reason was age or that

the stated reason is unworthy of belief—a mere pretext, possibly of discrimination." *Lindsey v. Baxter Healthcare Corp.*, 962 F.2d 586, 588 (7th Cir.1992).

Konowitz has chosen to prove his claim under the burden-shifting method.[1] Assuming he has established his prima facie case, he has still not demonstrated that Schnadig's asserted reasons were pretextual. Schnadig presents three reasons for the transfer: 1) Belgrad needed help in handling the "Parade of Rooms" project; 2) Belgrad's concern that Konowitz's poor communication with other corporate staff who used the MIS department's products and services impaired his usefulness in MIS; and 3) Belgrad wanted to create a better opportunity to use the skills of Ravindra Kumar, who replaced Konowitz as Vice President, MIS. Konowitz contends that numerous facts support the inference that the transfer was part of a scheme to induce him voluntarily to leave the company. The record, however, does not support this contention.

■ Konowitz attacks all three proffered reasons. With respect to Belgrad's alleged need for extra assistance, Konowitz points out that some of his responsibilities as Assistant to the President duplicated those he had formerly held, and that the expense reduction project was eventually assigned to someone else. These facts do not illustrate pretext. Although he retained some of the same duties, he was given at least two new major responsibilities. In his deposition, Konowitz classified his role in the "Parade of Rooms" project as a "very difficult task." The fact that the expense reduction project was later given to another employee, especially after Belgrad was dissatisfied with Konowitz's performance on the project, does not lead to the conclusion that the new position was a sham. Removing the project from Konowitz's oversight appears to be no more than a legitimate

business judgment which this court will not second guess. *See Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987) ("This Court does not sit as a super-personnel department that reexamines an entity's business decisions.").

Konowitz draws attention to the fact that no job description was prepared for his new position, in violation of corporate policy. Yet, James Waters, the employee responsible for preparing such job descriptions, testified that the lack of a management job description was not at all uncommon at Schnadig. Konowitz was not injured by the absence of a written job description since he received oral notice of his duties from Belgrad.

■ With respect to his communication skills, Konowitz states that he was fully qualified for both his former position and for the office of Assistant to the President. He relies on the above average evaluations that he consistently received from Schnadig. These facts do no more than repeat the second element of the prima facie case, and to show pretext Konowitz must do more than reiterate that his performance was satisfactory. *La Montagne*, 750 F.2d at 1414. On the other hand, Konowitz consistently received low marks on his evaluations in communication skills. This was not a shortcoming invented by Schnadig at the last minute. Belgrad did admit that at the time of the transfer, any lack of communication skills did not prevent Konowitz from effectively filling the Vice President, MIS position. But he also testified that transferring Konowitz would strengthen Schnadig by improving the area of communications and integration in the company as a whole. Konowitz counters that as Assistant to the President he would not have been given the duty of communicating important information to Belgrad if his com-

---

1. The only arguably direct evidence of age discrimination in the record is Konowitz's testimony about a conversation he had with Steve Schifrin, a Schnadig manager, shortly after the demotion. The word "age" was mentioned to account for the demotion. The record indicates that Schifrin had nothing to do with the final decision to transfer or demote Konowitz; Belgrad was the sole decisionmaker. "Statements made by inferior employees are not probative of an intent to discriminate by the decisionmaker." *Aungst v. Westinghouse Electric Corp.*, 937 F.2d 1216, 1221 (7th Cir.1991).

munication skills were truly such a grave cause for concern. Nonetheless, Konowitz's ability to communicate effectively with the president of the company does not undermine the fact that he had trouble relating to his coworkers and subordinates. The record supports the inference that the move was a legitimate business judgment. *See Lindsey v. Baxter Healthcare Corp., supra* ("[T]he age discrimination law does not shift responsibility for corporate personnel decisions from corporations to trial lawyers.").

■ Konowitz also questions the promotion of Ravindra Kumar as a legitimate reason for the transfer by emphasizing his own superior qualifications for the position of Vice President, MIS. This does not show pretext. Konowitz himself recommended to his superiors that Kumar be given more responsibility since Kumar was a good employee who otherwise would be tempted to leave the company. He also conceded that Kumar was technically qualified for the job. Belgrad stated that he believed Kumar's communication abilities were better than Konowitz's. Again, these facts suggest the personnel decision was a legitimate business judgment.

Konowitz asserts that his demotion was not legitimately pursuant to the RIF, but instead was the final step in the scheme to discriminate against him because of his age. Belgrad knew as early as 1987 that personnel cutbacks were necessary. No written guidelines were issued for the RIF, despite a corporate policy mandating guidelines. Konowitz argues that these facts and the fact that he retained some of the duties of his former position support his plot theory. He asks us to infer that with personnel cutbacks pending, Belgrad would not have created a new position without some ulterior motive.

Konowitz's theory is imaginative at best. This court has typically been skeptical of such elaborate plot theories. *See, e.g., McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 372 (7th Cir.1992) (affirming dismissal on summary judgment where ADEA plaintiff alleged transfer to newly created position was "merely a tran-

sition point from which WGN could fire him"); *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989) (ADEA plaintiff's allegation that he was transferred to a new division in the hope that he would fail, thereby providing an excuse for employer to fire him, is "an *exceedingly* improbable plot."). Despite pending cutbacks, Belgrad's decision to create a new position does not strike us as unusual. A company in financial trouble could reasonably create a position with the primary responsibility of helping to reverse its economic decline. The "Parade of Rooms" was a major marketing concept designed to increase market share. Konowitz was to analyze the duties of a large segment of employees and recommend cost-saving measures. Plausibly, this position would enable him to draw on his expertise without having to rely on communication skills necessary for a hands-on manager. When these facts are considered, Konowitz falls well short of his burden of showing that the job was concocted merely as a means to get rid of him. The absence of written guidelines for carrying out the RIF is irrelevant. The policy cited by Konowitz (Corp. Policy 105.06) does not state that any guidelines must be in writing, and Belgrad did issue the oral guideline that each department head must cut personnel by 10–percent.

■ As further evidence that he was discriminated against, Konowitz focuses on the fact that after his demotion he was not promoted or considered for any other positions for which he was qualified. This does not lead to an inference of discrimination, since nothing in the record suggests that he applied for any jobs or informed the company of his interest. *See Box v. A & P Tea Co.,* 772 F.2d 1372, 1377 (7th Cir.1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986) (summary judgment against plaintiff who could not show anything beyond her "general interest in obtaining some other job"). Konowitz also complains that Schnadig did not give him back his old position as Vice President, MIS by "bumping" Kumar. However, Konowitz has presented no evidence that Schnadig

ever practiced "bumping," and Schnadig attests that it does not. *Cf. Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314 (7th Cir.1987) (jury verdict for plaintiffs upheld where they presented affirmative evidence that the company commonly engaged in bumping).

### III.   Conclusion

Konowitz fails to raise a disputed issue of material fact as to whether Schnadig's reasons for his transfer or demotion were pretexts for age discrimination. Konowitz's plot theory is not a reasonable inference from the facts. The judgment of the district court is

AFFIRMED.