Craig S. JOHNSON, Plaintiff,

v.

HONDO, INC., a foreign corporation,
d/b/a Coca–Cola Bottling Company
of Wisconsin, Defendant.

No. 95–C–866.

United States District Court,
E.D. Wisconsin.

Sept. 9, 1996.

E. Campion Kersten, Kersten & McKinnon, Milwaukee, WI, for Plaintiff.

Bradford L. Livingston, David J. Rowland, Robert A. Kearney, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

### DECISION AND ORDER

WARREN, District Judge.

Now before the Court is defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 in the above-captioned matter. The issue before the Court is whether same-sex harassment is cognizable under Title VII, and if so, whether the plaintiff has alleged a cause of action for same-sex harassment sufficient to withstand summary judgment. The Court concludes that same-sex harassment is cognizable under Title VII, however, the plaintiff's claims did not rise to the level required for actionable sexual harassment and were not gender-based. Moreover, the plaintiff has failed to raise a genuine issue of fact that he was terminated in retaliation for bringing harassment complaints against a co-worker. For the following reasons, the defendant's motion is GRANTED and this case DISMISSED.

### I. PROCEDURAL BACKGROUND AND FINDINGS OF FACT

On May 15, 1972, defendant Hondo, Inc., doing business as Coca–Cola Bottling Company of Wisconsin (hereinafter "Coca–Cola"), hired plaintiff Craig Johnson ("Johnson") first as a production worker and then as a second shift "night loader." A night loader's duties include loading and unloading trucks,

operating a forklift and arranging cases of product according to customers' orders. Johnson continued working for Coca–Cola until his termination in 1993. Ollie Hicks ("Hicks"), Johnson's alleged sexual harasser, began working for Coca–Cola in 1988 as a night loader with Johnson at the company's Silver Spring facility. Both individuals worked the second shift in a 100% male work environment.

Johnson contends that Hicks began sexually harassing him in July, 1992. Johnson states Hicks persistently came up to him and would brush against him. Hicks would "grab and manipulate his crotch" and state "[g]onna [sic] get my dick sucked." (Johnson Aff. ¶ 35.) Johnson's claim of sexual harassment consists of repeated comments by Hicks directed toward Johnson, for example, "I'm going to make you suck my dick." Hicks also made comments about Johnson's girlfriend, stating that he would have her "suck his dick because she's got a nice ass." (Johnson Dep. at 90.) Johnson admits that he called Hicks a "punk" (referring to a prisoner's homosexual partner), "faggot," "fag" and "S.O.B." as a reaction and in response to Hicks' harassing comments. (Johnson Aff. ¶ 35.) Johnson also occasionally used profane language while at work. (Johnson Dep. at 43.) Hicks never physically touched Johnson, never threatened Johnson, never exposed himself to Johnson, never called Johnson at home or came to his home, and never sent him anything in writing. (Johnson Dep. at 107–08; Def.Statement of Undisputed Material Facts ¶ 42.)

On July 15, 1993, Hicks told another employee in Johnson's presence "I think I'm going to get my dick sucked tonight" and looked in a threatening manner at Johnson. (Johnson Aff. ¶ 42.) Johnson responded, "I'm sick of you fucking with me. What is your goddamn problem?" (*Id.*) Hick's made a "come on" motion with his fingers and said, "Across the street, across the street." Johnson responded, "No, let's talk about it now," but eventually agreed to go across the street during the lunch hour. (*Id.* at ¶ 43.) Johnson and Hicks drove their cars off the company premises and across the street. Johnson stated, "Why are you fucking with me,

what's the problem, because I want this stopped now." (*Id.* at ¶ 45.) Hicks reached into his truck and grabbed a car jack (the long steel vertical part of a car jack) and "came at" Johnson. Johnson reached into his car trunk and pulled out a baseball bat. Both men exchanged blows. Hicks landed on his back and Johnson continued to strike Hicks several times on the legs. Hicks went to the hospital in an ambulance and Johnson returned to work.

Coca–Cola's harassment policy, distributed in 1991, states that "[a]ny employee who feels that he/she has been harassed has a responsibility to bring it to the attention of his or her department head and the Human Resources Department." During the period of harassment by Hicks, Johnson repeatedly complained to his supervisors. On May 27, 1993, Johnson complained to Mike Schroeder, Coca–Cola's Director of Operations, about Hicks' behavior. Schroeder and warehouse manager John Starich, Johnson's supervisor, interviewed a number of employees, including Hicks, and Hicks left Johnson alone for approximately three weeks. Nonetheless, Hicks resumed his harassing conduct. Johnson never filed a complaint with the Department of Human Resources because according to Johnson, Human Resources personnel were not at the plant during his shift. (Johnson Aff. ¶ 56.)

Both Johnson and Hicks were suspended pending the results of Coca–Cola's investigation of the fight. Upon completing its investigation, Coca–Cola terminated both Johnson and Hicks for their involvement in the fight. Johnson was terminated by Coca–Cola for violating three rules of conduct, the foremost of which prohibited striking another employee. Johnson concedes that he struck Hicks, but believes that he was discharged for "opposing and complaining" about Hicks' behavior. (Johnson Aff. ¶ 63.)

Johnson filed a complaint in Milwaukee County Circuit Court on July 17, 1995. On August 18, 1995, Coca–Cola removed the case to federal court pursuant to 28 U.S.C. § 1441. Johnson's original complaint alleged six causes of action: (1) malicious prosecution (count I); (2) assault and battery (count II); (3) intentional infliction of emotional dis-

tress (count III); (4) invasion of privacy (count IV); (5) negligent retention and supervision (count V); and (6) sexual harassment (count VI). On January 12, 1996, this Court dismissed count I for failure to adequately allege a claim for malicious prosecution. Furthermore, the Court concluded that the Wisconsin Worker's Compensation Act barred the plaintiff's common law tort claims against Coca–Cola and dismissed counts II, III, IV and V. The defendant, Coca–Cola, has now filed a motion for summary judgment on Johnson's remaining sexual harassment and retaliation claim (count VI), which is fully briefed and ready for resolution. This Court has jurisdiction by reason of the federal question raised in plaintiff's complaint under 28 U.S.C. § 1331 and diversity of citizenship under 28 U.S.C. § 1332(a)(1). Venue in this Court is based on 28 U.S.C. § 1391(b).

## II. STANDARD OF REVIEW

■ Summary judgment is no longer disfavored under the Federal Rules of Civil Procedure. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed 'to secure the just, speedy and inexpensive determination of every action.' "). Indeed, Federal Rule of Civil Procedure 56 requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; the requirement is that there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed

matter that "might affect the outcome of the suit." *Id.*

The party moving for summary judgment bears the initial burden of showing that there are no material facts in dispute and that judgment should be entered in its favor. *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 148 (7th Cir.1994); *Hannon v. Turnage*, 892 F.2d 653, 656 (7th Cir.), *cert. denied*, 498 U.S. 821, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990). A defendant moving for summary judgment may satisfy this initial burden by pointing to a plaintiff's failure to introduce sufficient evidence to support each essential element of the cause of action alleged. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53. A party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denial," but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Becker v. Tenenbaum–Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir.1990). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R.Civ.P. 56(e).

In evaluating a motion for summary judgment, the Court must draw all inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989). "However, we are not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) (citations omitted.) A "metaphysical doubt" with respect to the existence of a genuine issue of triable fact is not enough to preclude summary judgment. *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355.

## III. ANALYSIS

### A. Johnson's Allegation of Sexual Harassment Against Coca–Cola.

■ Count VI of Johnson's complaint, alleging sexual harassment in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, presents the issue of whether same-sex harassment is included in Title VII's prohibition against employment discrimination based on gender. Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Two forms of workplace sexual harassment have been held to constitute sexual harassment in violation of Title VII: (1) quid pro quo harassment in which a supervisor demands sexual consideration in exchange for employment benefits and (2) sexually-oriented harassment by one's co-workers sufficiently egregious to create a hostile workplace environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). A hostile workplace environment involves "discriminatory conduct [which is] so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." *Harris*, 510 U.S. at 22, 114 S.Ct. at 371. Johnson's claim is one of hostile workplace environment.

Courts have conflicted over the protection that Title VII offers to individuals alleging sexual harassment by an employer or co-worker of the same gender. In *Goluszek v. H.P. Smith*, 697 F.Supp. 1452, 1456 (N.D.Ill. 1988), the court concluded that Congress enacted Title VII with the goal of remedying an imbalance of power and an abuse of that imbalance by the powerful which results in discrimination against a discrete and vulnerable group. The plaintiff in *Goluszek*, subjected to seven years of repeated incidents of harassment from male co-workers, was a male in a male-dominated workplace. *Id.* The court held that even if the male plaintiff was harassed by male co-workers "because" he was male, that "was not the type of conduct Congress intended to sanction when it enacted Title VII." *Id.* Moreover, because the harassment did not take place in an anti-male environment, the court held that the plaintiff did not suffer from degradation based on his "inferior" sex and granted the employer summary judgment. *Id.*

Other courts have interpreted *Goluszek* as a refusal to allow same-sex harassment claims to fall within the purview of Title VII. *See Oncale v. Sundowner Offshore Servs., Inc.*, 83 F.3d 118, 120 (5th Cir.1996) (ruling that male-on-male harassment with sexual overtones is not sex discrimination under Title VII); *McWilliams v. Fairfax Cty. Bd. of Supervisors*, 72 F.3d 1191, 1196 (4th Cir. 1996) (holding that an employee did not have a Title VII sex discrimination claim for hostile environment in violation of Title VII based on heterosexual-male-on-heterosexual-male harassment), *petition for cert. filed*, 64 U.S.L.W. 3839 (U.S. June 10, 1996) (No. 95–1983); *Benekritis v. Johnson*, 882 F.Supp. 521, 526 (D.S.C.1995) (ruling that a claim of sexual harassment by a member of the same sex is not cognizable under Title VII); *Wrightson v. Pizza Hut of America*, 909 F.Supp. 367, 368 (W.D.N.C.1995) (agreeing with the court in *Benekritis* by refusing to recognize the prohibition of intra-gender harassment under Title VII); *Garcia v. Elf Atochem North America*, 28 F.3d 446, 451–52 (5th Cir.1994) (holding that harassment of a male employee by a male supervisor does not constitute sexual harassment within the purview of Title VII, even though the harassment has sexual overtones). The courts' narrow interpretation of Title VII is based on the fear that a broader reading may afford protection beyond intentional discrimination "because of" the offended worker's "sex" to unmanageably broad protection of the sensibilities of workers "in matters of sex." *McWilliams*, 72 F.3d at 1196.

The Seventh Circuit, however, stated in dicta that same-sex harassment cases are not precluded from consideration under Title VII. In *Baskerville v. Culligan International Co.*, 50 F.3d 428, 430 (7th Cir.1995), Judge Posner stated that "[s]exual harassment of women by men is the most common kind, but we do not mean to exclude the possibility that sexual harassment of men by women, or men by other men, or women by other wom-

en would not also be actionable in appropriate cases."[1] Relying on this expansive reading of Title VII, the court in *Griffith v. Keystone Steel and Wire,* 887 F.Supp. 1133, 1136 (C.D.Ill.1995), ruled that Congress intended Title VII to protect both males and females from sexual harassment in the workplace. See *Meritor,* 477 U.S. at 67, 106 S.Ct. at 2405 (" 'Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.' ") (quoting *Henson v. Dundee,* 682 F.2d 897, 902 (11th Cir.1982)).

The court in *Vandeventer v. Wabash Natl. Corp.,* 887 F.Supp. 1178, 1181 (N.D.Ind.1995), adopted this interpretation of Title VII and withdrew its previous ruling that same-sex harassment is not actionable under Title VII. The court stated that although Title VII did not protect the specific plaintiff from the harassment alleged therein, "a man can state a claim under Title VII for sexual harassment by another man ... if he is being harassed because he is a man; the relative genders are irrelevant." *Id.* However, the court further stated that such a claim may be rare since an "anti-male" environment must be proven to establish such harassment. *Id.*

■ The Equal Employment Opportunity Commission, the agency charged with establishing rules and administering the provisions of Title VII, has determined that the respective sexes of the harasser and the victim are irrelevant in determining whether Title VII has been violated:

The victim does not have to be of the opposite sex from the harasser. Since sexual harassment is a form of sex discrimination, the crucial inquiry is whether the harasser treats a member or members of one sex differently from members of the other sex. The victim and the harasser may be of the same sex where, for instance, the sexual harassment is based on the victim's sex (not on the victim's sexual preference) and the harasser does not treat the employees of the opposite sex the same way.

EEOC Compliance Manual, CCH, § 615.2(b)(3). Although the guidelines of the EEOC are not law, and consequently, not binding on the Court, it is certainly appropriate for the Court to consider the EEOC's interpretation of Title VII as persuasive.

■ In conclusion, the Court holds that same-sex harassment claims are cognizable under Title VII.[2] The statutory language of Title VII is non-exclusive and protects all employees from gender discrimination inflicted by an "employer." The gender of the harasser is irrelevant. However, in a same-sex harassment cause of action, the harassment must be because of the employee's gender and not for some other reason outside the protections afforded by Title VII.

■ Thus, an individual can succeed in bringing a same-sex harassment claim under Title VII if he shows that (1) he is a member of a protected class; (2) he was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a

---

1. Other circuit courts have acknowledged the possibility of actionable same-sex sexual harassment under Title VII. See *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1464 (9th Cir.1994) (noting that "we do not rule out the possibility that both men and women ... have viable claims against [a male supervisor] for sexual harassment"), *cert. denied,* —— U.S. ——, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995); *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 148 (2d Cir.1993) (Van Graafeiland, J., concurring) (arguing that "harassment is harassment regardless of whether it is caused by a member of the same or opposite sex"), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994).

2. Various district courts have determined that same-gender sexual harassment may state a

cause of action under Title VII. This conclusion seems to be the dominant trend. See *Williams v. District of Columbia,* 916 F.Supp. 1, 8 (D.D.C. 1996); *Sardinia v. Dellwood Foods, Inc.,* 1995 WL 640502, at *4–5 (S.D.N.Y. Nov. 1, 1995); *King v. M.R. Brown, Inc.,* 911 F.Supp. 161, 167 (E.D.Pa.1995); 1 *Ecklund v. Fuisz Technology, Ltd.,* 905 F.Supp. 335, 338 (E.D.Va.1995); *Raney v. District of Columbia,* 892 F.Supp. 283, 286 (D.D.C.1995); *E.E.O.C. v. Walden Book Co., Inc.,* 885 F.Supp. 1100, 1101 (M.D.Tenn.1995); *Roe v. K–Mart Corp.,* 1995 WL 316783, at *1 (D.S.C. March 28, 1995); *McCoy v. Johnson Controls World Services, Inc.,* 878 F.Supp. 229, 231 (S.D.Ga.1995); *Prescott v. Independent Life & Accident Ins. Co.,* 878 F.Supp. 1545, 1550 (M.D.Ala.1995).

**1410**

sexual nature; (3) the harassment complained of was based upon sex; (4) the defendant's conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment; and (5) the employer knew or should have known of the harassment and failed to take appropriate corrective action. *See Carr v. Allison Gas Turbine Div.*, 32 F.3d 1007, 1008 (7th Cir.1994). Johnson must ultimately establish that he was sexually harassed because of his gender. *Meritor*, 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (stating that an actionable violation of Title VII consists of discrimination based on sex that has created a hostile working environment); *Vandeventer*, 887 F.Supp. at 1181 (holding that a man can state a claim under Title VII for sexual harassment by another man only if he is being harassed because he is a man); *Hopkins v. Baltimore Gas and Electric Co.*, 77 F.3d 745, 751 (4th Cir.1996) (interpreting Title VII within its legislative context and ruling that Title VII prohibits sex discrimination based solely on an employee's gender), *petition for cert. filed*, 64 U.S.L.W. 3839 (U.S. June 3, 1996) (No. 95–1961).

In light of the facts presented, it is clear that Johnson does not satisfy the requirements for a same-sex harassment cause of action. First, Hicks' harassment of Johnson consisted of crude comments and gestures. Although these comments were sexually explicit and offensive to Johnson, Title VII does not expect employers to purify the language in the workplace or remove all vulgarity or coarse comments. *Baskerville*, 50 F.3d at 430. *See also Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Carr*, 32 F.3d at 1009. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abuse—is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. at 370. In order to determine whether the harassment Johnson was subjected to by Hicks was sufficiently severe or pervasive to bring it within Title VII's purview, the Court must consider the entire record and the totality of circumstances, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 22, 114 S.Ct. at 371. Conduct that is merely offensive is insufficient to implicate Title VII. *Id.* at 21, 114 S.Ct. at 370.

In the instant case, the harassment consisted of epithets, with sexual overtones, uttered in an exclusively male work environment. The facts presented by Johnson indicate Johnson was subjected to the vulgar comments and gestures of a boorish co-worker, whose command of the English language was limited, singularly focused and clearly unrefined. This type of conduct does not cross "the line that separates the merely vulgar and mildly offensive from the deeply offensive and sexually harassing." *Carr*, 32 F.3d at 1010. Although Hick's comments were inappropriate and crude, the Court holds that Hick's conduct was not sufficiently severe or pervasive for Johnson to establish a case of sexual harassment under Title VII. Even though Johnson did not invite Hicks' comments, Johnson responded to Hicks with coarse language and derogatory comments, indicating Johnson was not intimidated by Hicks. The culmination of this workplace animosity was the fight that occurred on July 15th, that cost both men their jobs. Although Johnson may not have been the aggressor in the altercation that sent Hicks to the hospital in an ambulance, the facts of the fight present a personal grudge match between two workers rather than a case of sexual harassment. (Def.'s Statement of Material Facts ¶ 28–35; Johnson Dep. 116–130.) In conclusion, Title VII was not enacted to create a federal remedy for unpleasant and offensive conduct on the job nor to function as a workplace referee able to resolve personal disputes between co-workers.

Furthermore, it is unclear whether Coca-Cola was sufficiently on notice to effectively respond to Johnson's complaints. Although Johnson reported the incidents to his superiors, he never fulfilled the second requirement of the company's harassment policy by reporting the harassment to the

Human Resources Department. *See Baskerville,* 50 F.3d at 432. However, under the circumstances of working a second shift, reporting problems to an immediate supervisor should suffice to put the company on notice. Nonetheless, the Court reserves ruling on whether Coca–Cola was on notice.

 Finally, Johnson failed to demonstrate how Hicks harassed Johnson because of Johnson's gender. This failure fatally flaws Johnson's allegation of sexual harassment. Johnson's sole evidence of sexual harassment consists of inappropriate comments, such as "suck my dick," which certainly insulted Johnson, but not Johnson's gender. *See Vandeventer,* 887 F.Supp. at 1181 n. 2 (coworker called plaintiff a "dick sucker," and the court commented that "[w]hile the epithet used and the taunting had a 'sexual' component, as do most expletives, the crucial point is that the 'harasser' was not aiming expletives at the victim *because of the victim's maleness.* He was taunting the victim because he did not like him. [The plaintiff's] gender was irrelevant. There was no evidence that the abuse was based on the 'harasser's' disdain for the victim's gender.") (emphasis in original). Although Hicks' comments and gestures directed at Johnson used sexually explicit language and sexual innuendo, the comments were directed at Johnson because of a personal animosity between the two men—not because of Johnson's gender. Johnson worked in an exclusively male work environment and never contends that his work environment was "anti-male." The facts presented support the contention that the Hick's harassment of Johnson was motivated by mutual dislike rather than Johnson's gender. The record reflects no evidence that Hicks directed the remarks at Johnson because Johnson is a man. *See Meritor,* 477 U.S. at 66, 106 S.Ct. at 2405 (sexual harassment is "discrimination based on sex [that] has created a hostile or abusive work environment").

 Johnson's purports that Hicks is a homosexual. During his deposition, Johnson opined that Hicks "very possibly" was a homosexual and refers in his brief to Hicks' "homosexual" harassment, advances, and conduct. (Johnson Dep. at 69 & Plaintiff's Brief in Opposition at 12–15.) Plaintiff's argument that Hicks is homosexual is based on the sexually-charged language used by Hicks. However, Hick's sexuality is not the legal issue before the Court nor demonstrated by Hicks' verbal banter. Sexual harassment claims require evidence presented in the record that the alleged offensive conduct was motivated by the plaintiff's gender. Hicks' crude remarks and vulgar language were directed toward the plaintiff as well as his girlfriend. A male co-worker may taunt another male co-worker about sexual matters because of his own sexual obsession, insecurity or "meanness of spirit," but not specifically "because of the victim's sex." *McWilliams,* 72 F.3d at 1196. Moreover, even if Hicks were homosexual, his sexuality does not prove that his comments were directed toward Johnson because Johnson is a man. *See Carr,* 32 F.3d at 1009 (issue is "whether the plaintiff was, because of her sex, subjected to" harassment). The conjecture of plaintiff's, that Hicks is homosexual, is pure speculation, irrelevant and does not suffice to defeat a properly supported motion for summary judgment. Johnson "may not rest upon mere allegations or denials," but must go beyond the pleadings and introduce affidavits or other evidence setting "forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The plaintiff has not met his burden.

 In conclusion, Title VII prohibits discrimination on the basis of a protected characteristic, such as gender, race, or national origin. "If the workplace is unsavory for any reason other than hostility generated on the basis of race, gender, ethnicity, or religion no federal claim is implicated. In short, personality conflicts between employees are not the business of the federal courts." *Vore v. Indiana Bell Telephone Co.,* 32 F.3d 1161, 1162 (7th Cir.1994). Quite simply, the statute is not designed to rid the workplace of boors, vulgarians or highly disagreeable co-workers. Johnson has failed to produce any evidence that he was targeted by Hicks because of his gender, and consequently, Coca–Cola is entitled to summary judgment on Johnson's sexual harassment claim.

### B. *Johnson's Retaliation Claim Against Coca–Cola.*

The final issue presented by count VI of Johnson's Complaint is whether Coca–Cola fired Johnson in retaliation for Johnson's harassment complaints. The Seventh Circuit has established that summary judgment should not be denied based on elaborate plot theories. *See Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir.1992); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 372 (7th Cir.1992); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir.1989). Therefore, to defeat summary judgment, Johnson must show that a genuine issue of material fact exists regarding Coca–Cola's retaliatory motivation in its termination of Johnson.

The undisputed facts demonstrate that Johnson fought with Hicks and that Coca–Cola's rules prohibit fighting and provide that employees who fight may be discharged. Tim Faulks, the human resources manager, informed Johnson in writing that he was being discharged for fighting. Hicks was also discharged for fighting. It is clear to the Court that Coca–Cola's reason for its termination of Johnson was valid. This conclusion is supported by the fact that Coca–Cola suspended Johnson immediately following his fight with Hicks, investigated the incident and terminated Johnson only after the conclusion of this investigation. According to the sequence of events, Coca–Cola's termination of Johnson was a result of the Hicks–Johnson altercation and not in retaliation against Johnson for his harassment complaints.

Johnson argues that he does not "believe" the company's stated reason for his termination. (Johnson Aff. ¶ 63.) However, unless Johnson refutes the specific reason given for his termination, he "is simply challenging the wisdom of the employer's decision," which the Court will not review. *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 403 (7th Cir.1992). Johnson's failure to directly rebut Coca–Cola's stated reason for discharging him entitles Coca–Cola to summary judgment of the remaining retaliation claim. *See EEOC v. Our Lady of the Resurrection*, 77 F.3d 145, 151 (7th Cir.1996) ("Without record evidence to refute the [employer's] explanation, the EEOC has failed to establish pretext."). In conclusion, Johnson has failed to present any evidence whereby a reasonable jury viewing the evidence in a light most favorable to the plaintiff could find or infer retaliation. There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law.

The Court acknowledges that the burden faced by plaintiff-employee, attempting to withstand summary judgment, is significant. The Seventh Circuit has commented on the "practical inability of a plaintiff in a Title VII case to get past summary judgment unless he presents evidence other than what comes out of his own mouth." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir.1995). Nonetheless, a defendant-employer has procedural rights, and the plaintiff's burden is "necessary to distinguish the real from the spurious case of discrimination." *Id.* at 71.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** in its entirety.